## Richmond.

SLATER, MYERS & CO. V. ARNETT AND ALS.

FEBRUARY 11th, 1886.

PARTNERSHIP—*Settlements—Status quo ante.*—Where suit in equity is instituted to settle the accounts of a dissolved firm, one of the members being dead, and the report of the master to whom those accounts have been referred, shows that, after diligent search, he has been unable to discover and report any evidence whatever to base a statement of the true condition of affairs between the members of the late firm, and of its assets, &c., the court, not being able to proceed to judgment upon suppositions and presumptions without evidence, can do no better than to withhold its hand, and to leave the parties to stand where they had placed themselves before suit was brought.

Appeal from decree of chancery court of city of Richmond, June 21, 1883, in the chancery suit wherein A. D. Arnett is complainant, and Slater, Myers & Co., and others, are defendants, the object whereof is the settlement of the accounts of the late firm of said A. D. Arnett and his brother, H. C. Arnett, deceased, which did business in the name of H. C. Arnett & Bro., and the estate of the said H. C. Arnett, deceased. In its character it was a general creditors' suit. The decree of the court below was adverse to Slater, Myers & Co., who appealed therefrom; and the appellee, A. D. Arnett, feeling aggrieved also by a portion of said decree, presented a counter appeal.

Opinion states the facts.

*F. M. Conner,* for the appellants.

*John Hunter, Jr.,* for the appellees.

LACY, J., delivered the opinion of the court.

The case is as follows: H. C. Arnett and A. D. Arnett were engaged in the mercantile business in the name of H. C. Arnett & Brother, in the city of Richmond. On the first day of January, 1877, this partnership was dissolved by mutual consent, and H. C. Arnett succeeded to the business, and A. D. Arnett retired. H. C. Arnett agreed to pay to the said A. D. Arnett $5,000. The precise terms of the dissolution otherwise is matter of dispute, and cannot be determined from the evidence in the record.

One debt due to the firm was a debt of $1,150, due by Fleming & Brother, of Goochland county. This was settled on the 20th day of January, 1879, by the sale of what is called in the record " Pleasants' Island," a tract of land in the county of Goochland, to H. C. Arnett and Archer Arnett, his brother, by the firm of Fleming & Brother, upon which a mortgage subsisted for a debt of $1,098, which was assumed and paid by H. C. Arnett. The deed to "Pleasants' Island" was made to H. C. Arnett and Archer Arnett, his brother, and so stands to the present time.

After this time, H. C. Arnett, who continued to do business as a merchant at the old stand of H. C. Arnett & Brother, became embarrassed, cramped in business, as is alleged, by the money paid to A. D. Arnett, and the payment of the debt assumed on the "Pleasants' Island" tract of land. And on the 23d of March, 1880, he sold this "Pleasants' Island" to W. D. Trice, his clerk, for $2,300, for which Trice gave his notes—$530, $560, $590, and $620—payable respectively at

one, two, three, and four years from date, and conveyed the property to Trice, who gave a trust deed to secure the purchase money.

On the 6th day of April, 1880, a few days after the deed to Trice, H. C. Arnett went to the county of Louisa, where he was, together with his brother, A. D. Arnett, the owner of a tract of land, and confessed a judgment in favor of his said brother for $1,500, *with interest from March* 26, 1880, which is claimed to be the balance due by H. C. Arnett on account of his brother's interest in the store purchased by him January 1, 1877.

About the time of the sale of the "Pleasants' Island" tract of land to Trice, H. C. Arnett made an arrangement with the appellants, Slater, Myers & Co., that they should furnish goods to Trice upon the notes of Trice, which H. C. Arnett would endorse, and for the further security of said notes of Trice for goods, he delivered to the said appellants the Trice notes for the purchase of "Pleasants' Island," secured by trust deed on the same, to be held by them as collateral security for the Trice notes for goods.

The chancery court referred the cause to a commissioner for accounts to be taken therein: 1. An account of the estate of H. C. Arnett, deceased, real and personal. 2. An account of all the transactions of Lavalette S. Arnett, administratrix of H. C. Arnett, deceased. 3. An account of the debts against the estate of H. C. Arnett, deceased. 4. An account of the partnership of H. C. Arnett & Brother. 5. An account of all debts against the firm of H. C. Arnett & Brother. 6. An account between the partners of the said firm. 7. An account of the property sold by H. C. Arnett to Trice, and the consideration therefor. 8. An account of the property of H. C. Arnett subject to the claim of homestead of his widow. 9. An account showing specially all facts in reference to the convey-

ance by Fleming & Brother by deed dated January 20, 1877, of the Goochland property, and what consideration was paid for same; how paid and by whom; whether the same was the property of A. D. Arnett and H. C. Arnett, or the property of the firm of H. C. Arnett & Brother, or whether it belonged to either one of the Arnetts individually, and how the liens on the property were held, and by whom.

The commissioner reported that there was no evidence before him upon which he could state account No. 1. And the same report was made as to account No. 2. A statement of debts under account No. 3 was reported. Account No. 4 was a statement as to "Pleasants' Island," which the commissioner held to be partnership property. Account No. 5, that there were no unpaid partnership debts. Account No. 6, that there was no evidence upon which he could state an account between H. C. Arnett and A. D. Arnett as partners, except that H. C. Arnett owed the $1,500, upon which he had confessed judgment, and that this was due under the contract of dissolution.

The commissioner reported as to the terms of the dissolution that "nearly as possible," they were as follows: Upon the payment of $5,000, A. D. Arnett agreed to withdraw from the firm, leaving H. C. Arnett to continue the business, collect the assets and pay the debts.

There was no evidence as to the disposition of the surplus · after the payment of the partnership debts; that on the 25th of April, 1877, A. D. Arnett received the notes of H. C. Arnett for $3,000 ; on April 6, 1880, confessed judgment for $1,500 in favor of A. D. Arnett, as has been already said, and that this was all that was due of the $3,000 ; that the books of the concern were of no value whatever in the cause, as evidence, and to this counsel on both sides assented. Account No. 7 : that the deed to Trice of March 23, 1880, and the sale by H. C. Arnett to Trice of his stock of goods on the 5th of June,

1880, together with other property, a horse and wagon, and iron safe, were, with fraudulent intent, of which Trice had knowledge, and the said sales were void. Account No. 8 was to sustain the claim of homestead of the widow in the Louisa land, and against it as to the Goochland land. As to account No. 9, the commissioner reported that on the 20th of January, 1877, Fleming & Brother, being indebted to the firm of H. C. Arnett & Brother (which firm had dissolved on the 1st day of January, 1877,) in the sum of $1,150, in payment of said debt, executed a deed of bargain and sale of a tract of land in Goochland county, known as "Pleasants' Island," to "H. C. Arnett, and Archer, his brother;" that counsel for H. C. Arnett &'Brother and for the firm of Fleming & Brother were present, and that said deed was deliberately executed after consultation between said counsel and free discussion of the point whether it should be made to H. C. Arnett solely, or to H. C. Arnett and Archer Arnett jointly; that the conveyance was made subject to a lien amounting to $1,098.24, which was paid off by H. C. Arnett subsequently; that the legal title passed to the brothers jointly as tenants in common, but affected with a trust for the benefit of the partnership until all the accounts were settled and debts paid; that the Trice deed to this property, of March 23, 1880, was void as to the creditors of this partnership and of H. C. Arnett, because of the fraudulent intent stated above; but that the transfer of the notes stated above to Slater, Myers & Co. was a *bona-fide* transaction, and Slater, Myers & Co. were purchasers for value without notice of the fraud, of so much of the property as could legally pass by the deed of H. C. Arnett to Trice; that the title was jointly in H. C. Arnett and Archer Arnett as partners of the firm of H. C. Arnett & Brother, and that it was part of the partnership assets; that Archer Arnett never did any act which could divest him of the legal title; that the

only conveyance that was made, was made by H. C. Arnett with intent to defraud his creditors, and that thus the legal title of A. D. Arnett could not be divested; that to convert joint property into separate every requisite of transmission must be attended to according to the nature of the property assigned; that it must be presumed that if H. C. Arnett had the right to call upon his brother for a conveyance of the property, before paying him in full, that he would have done so; that not having done so, all that could pass by his deed was H. C. Arnett's undivided moiety; that to this Slater, Myers & Co. were entitled, but only to the extent that it may be necessary to secure to them the payment of their debt, for which this is held as collateral; that Archer Arnett holds the legal title, and with it the equitable right to be paid the amount still due him in consequence of the contract of dissolution; that the judgment confessed in favor of said A. D. Arnett had been docketed in Goochland county, and was a lien upon the land of H. C. Arnett, and that the creditors of H. C. Arnett held their right as to said land subject to this lien; that the liens on the Goochland land are as follows:

The notes of Slater, Myers & Co. constitute the first lien upon H. C. Arnett's moiety; that the judgments of A. D. Arnett and F. L. Arnett (the latter for $153.42) rank next to it. As to the other moiety, the judgment of A. D. Arnett, amounting to $1,784.98, must be first paid in full, and the said judgment of F. L. Arnett is the second lien. To this report exceptions were filed as follows:

A. D. Arnett excepted—1st. Because Slater, Myers & Co. were reported as *bona-fide* purchasers, and entitled to the first lien on H. C. Arnett's moiety. 2d. Because A. D. Arnett was reported, or seemed to be reported, as holding his moiety merely as a security for what H. C. Arnett owed him on account of partnership transactions; whereas he was absolute

owner of that moiety.    3d.  Because H. C. Arnett was reported as bound for a note of $235.76 of Trice's, on which he (H. C. Arnett) was endorser, which had not been protested.    4th.  Because the debt in favor of Slater, Myers & Co. had been reported upon copies only, the originals not being filed.    5th.  Because the commissioner failed to report the judgment of A. D. Arnett as entitled to share in the personalty of H. C. Arnett in class No. 2.

F. L. Arnett excepted, because her judgment was not reported as entitled to share in the personalty of H. C. Arnett in class No. 2.

Slater, Myers & Co. excepted—1st.  Because the commissioner had reported that the deed of Fleming & Bro. was not made to both H. C. & A. D. Arnett by mistake, but was deliberately made to both; and did not report that the said deed should have been made to H. C. Arnett alone, who had purchased the entire interest of A. D. Arnett in the partnership January 1st, 1877, when the deed was made in payment of a partnership debt January 20th, 1877.    2d.  Because the commissioner did not report that H. C. Arnett was entitled to the amount paid by him under the mortgage, resting on the land when purchased of Fleming & Bro., of $1,098.74, which was paid off by H. C. Arnett.    3d.  Because the commissioner had reported that A. D. Arnett is entitled to hold one moiety of Pleasants' Island, as security for the debt due to him from H. C. Arnett on account of his purchase of his interest in the partnership.    4th.  Because said commissioner reported that H. C. Arnett's widow was entitled to a homestead exemption in the one-half interest of H. C. Arnett in the Louisa land of two hundred and fifty-six acres, when their notes waived the benefit of the homestead exemption.

On the 21st of June, 1883, the said chancery court rendered a decree in the cause, by which it was decided: That Slater

Myers & Co. have a lien only on H. C. Arnett's undivided moiety of Pleasants' Island, for the payment of their debt against said H. C. Arnett, deceased; that the other undivided moiety of said property is subject to the lien of the judgment of A. D. Arnett against said H. C. Arnett, deceased; and overruled the first, second and third exceptions of Slater, Myers & Co., and the first and second exceptions of A. D. Arnett to the said report; that all the creditors of H. C. Arnett, except J. W. Laube, were upon the same footing as to the personalty of H. C. Arnett—J. W. Laube being reported in the first class— that H. C. Arnett was released from liability on the Trice note of $235.76; that Mrs. L. T. Arnett is not entitled to the homestead exemption in the Louisa land; sustaining the exception of F. L. Arnett, the fourth exception of Slater, Myers & Co., the third and fifth exception of A. D. Arnett, and, under the fourth exception of A. D. Arnett, required the original notes to be produced and filed; and subject to these modifications, sustained the report of the commissioner and decreed the sale of the land in Goochland and the undivided moiety of H. C. Arnett in the Louisa land of 256 acres. From this decree Slater, Myers & Co. applied for and obtained an appeal to this court. The errors assigned here by the appellants are to the action of the court in overruling their exceptions, No. 1, No. 2 and No. 3, as set forth above. And the appellee, A. D. Arnett, assigns error, under rule nine of this court, to the action of the chancery court in overruling his exceptions, No. 1 and No. 2.

An inspection of the evidence in the record shows that there is no evidence to show what the terms of dissolution of the partnership of H. C. Arnett & Bro. were. The appellants claim that on the first day of January, 1877, the partnership was dissolved by mutual agreement, and that A. D. Arnett was to retire and H. C. Arnett was to continue the business, and to pay the retiring partner $5,000, which has never yet been fully paid. And this is conceded on both sides.

But the appellants contend that the terms were, that the $5,000, so agreed to be paid, was in full satisfaction of all the interest of A. D. Arnett, the retiring member of the firm, and that H. C. Arnett succeeded to all the property of the partnership; was to pay the debts due by the firm, and to collect and own the debts due to the firm. If this could be established by evidence, the question would not be difficult of solution. But on the other hand, the appellee, A. D. Arnett, contends that $5,000 was to be paid him, and H. C. Arnett was to collect the assets, pay the debts, and pay himself $5,000, and then the surplus was to be equally divided between them.

There is no evidence to sustain one theory or contention more than another. The "Pleasants' Island" property was acquired *after the dissolution* of the partnership in payment of a debt due the late firm; and the manner of the conveyance—the deed being made to the two members of the late firm, instead of to the partner succeeding to the business—would be a mistake if the contention of the appellant is correct; and yet, although this alleged mistake was immediately made known to the partner succeeding to the business, in January, 1877, he remarked that he would arrange it with his brother; and he lived until January, 1881—a period of four years—paid his brother large sums of money, and finally confessed judgment in favor of his brother a few months before his death, and never took any steps, so far as the record discloses, to have the alleged mistake corrected by any change in the title. When he confessed judgment for the balance due his brother on account of his purchase of his interest in the late firm of H. C. Arnett & Bro., it appears to be an agreed balance, as the interest is made to begin as of the 26th day of March, 1880, three days after his deed to Trice, and eleven days before the date of the judgment, the debt being one upon which interest had accrued since 1877. H. C. Arnett not only knew then,

but had known for four years that he and his brother jointly held the title to the Goochland property. If his settlement was in full, to exclude the "Pleasants' Island" property, it is reasonable to suppose that he would then have obtained a release of his brother's claim to "Pleasants' Island;" for if A. D. Arnett did not know the terms of that deed, H. C. Arnett confessedly did. If, on the other hand, the settlement was made to include the interest of his brother in "Pleasants' Island," along with the $1,500, in full satisfaction of the debt due A. D. Arnett, then the conduct of H. C. Arnett toward this property would reasonably have been, what it was, to leave the deed undisturbed. And, as the partnership transactions cannot be settled upon any basis at all rational now—the books being so badly kept as to be worthless, and there being no evidence produced on either side upon which a court could proceed toward any rearrangement of the affairs—what can be done except to leave them as the brothers did, when both were living and arranging their business between themselves? There can be no reasonable doubt that when H. C. Arnett went to the county of Louisa, and confessed this judgment, as has been set forth, that there was a settlement of some sort between the brothers.

It is true that A. D. Arnett went to Goochland upon the death of his brother, and docketed his judgment against his brother, but his brother had land in Goochland other than the moiety claimed by A. D. Arnett. The other half belonged to him; and it must be borne in mind that the deed to Trice was assailed as fraudulent and void. And the circumstance that Trice says that A. D. Arnett said to him when he returned from Goochland, "Did you know that I owned one-half of 'Pleasants' Island?'" is not so significant as is claimed by the appellants.

It may have been that A. D. Arnett had seen the Trice deed

for the first time while in Goochland, which purported to convey the whole tract to Trice, instead of the one undivided half to which H. C. Arnett held title. But courts of justice cannot proceed to judgment upon suppositions, or mere presumptions without evidence, and as there is no evidence upon either side adduced to determine the disputed question, the court cannot do better than to withhold its hand, and leave the parties where they have placed themselves.

It cannot be presumed that H. C. Arnett nor that A. D. Arnett did not understand their mutual relations, and if they did, the existing status is the one mutually assumed. There is no evidence upon which the deed can be corrected ; no mistake has been proved ; and we must hold that no mistake was made.

It is true that when H. C. Arnett was informed, after the dissolution, that the deed had been made to both him and his brother, he said he would have preferred it the other way, but that he would arrange the matter with his brother; and as he then held in his own hands the means for a full indemnity to himself—in the money he owed his brother, and which he afterwards in large part paid to his brother—is it not reasonable that he used so simple a means of saving himself from loss, by charging his brother in the settlement with this amount, and applying it as a credit to his indebtedness? In his letter to his brother he speaks of the Goochland land which "*we had to buy,*" and which he had been embarrassed in paying for; such language being in full view the idea of his claim for his payments in this regard—in settling with his brother—but this letter is not entitled to any great weight, standing alone, and other letters being called for and not produced. It seems to be safest to hold that this property, in the absence of proof to the contrary, stands according to the terms of the deed. One-half belonging to H. C. Arnett and the other half belonging to A. D. Arnett.

There is no error in the decree of the chancery court of which the appellants can complain. But in overruling the second exception of A. D. Arnett to the commissioner's report, the chancery court decided that A. D. Arnett held his moiety only to secure the payment of his judgment upon the idea that the said moiety was held affected with a trust—being partnership property—to satisfy the debt due him on account of his interest in the partnership. But this overlooks the fact that the same was acquired after the dissolution of the partnership. One moiety was not partnership property more than the other, and if so held his claim to it would depend upon a settlement which is admitted cannot now be made. His claim to the same does not rest upon any such ground, but grows out of his deed to the same, which there is no evidence to correct, if wrong, and it follows that he is the absolute owner of this moiety.

We are, therefore, of opinion that while there is no error in the said decree of which the appellants can complain, that the chancery court erred as to this error assigned by the appellee, and the said decree must be reversed on that ground and affirmed in other respects.

DECREE REVERSED IN FAVOR OF THE APPELLEE.