# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## RYMAN v. RYMAN'S EXECUTOR AND OTHERS.

### December 5, 1901.

1. PARTNERSHIP—*Accounting—Laches.*—It is the duty of each member of a partnership to keep a correct account of his transactions, and if, through the negligence of one or all the members of a firm, the evidence of the partnership transactions has been lost, or the accounts have been kept in such a confused way that the court cannot see how to do justice between them, it will not order an accounting. This is peculiarly true where the negligence is that of an active partner seeking an accounting from the executor of a deceased silent partner.

Appeal from a decree of the Circuit Court of Shenandoah county pronounced April 11, 1899, in a suit in chancery wherein the appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*Walton & Walton* and *E. D. Newman,* for the appellant.

*J. H. Williams,* for the appellees.

HARRISON, J., delivered the opinion of the court.

John Ryman died August 29, 1897, leaving a will dated August 10, 1897, in the third clause of which he makes the following statement with respect to the estate left by him: "My estate, as I recall it, consists of my home place, where I

now reside, being the tract I bought from Aaron Moore shortly after the war, containing one hundred and eighty acres, more or less, and an one-third interest in the Aaron Moore land on Mill Creek. I originally owned two interests (two-thirds), but one interest I gave to my son, Lemuel L., in consideration of his labor and services rendered me. I hold my life estate in the other third, to which my last wife's children will succeed. As to personalty, it consists of bonds, and horses, cows, cattle, farming utensils, household property, &c., both at my home place and where my son Lemuel now resides, on the Moore place, on Mill Creek."

After thus describing his estate, the testator proceeds to dispose of the same by giving:

1st. To his daughter, Mrs. Funkhouser, his home place where he resided, but charged with one thousand dollars in favor of his daughter, Mrs. Halterman.

2d. He gives to his daughter, Mrs. Halterman, his interest in the Moore Place, on Mill Creek, and the $1,000 charged on the home place.

3d. He gives his son, Thomas J., one hundred dollars.

The fourth clause, in favor of his son Lemuel, is as follows: "To my son, Lemuel L., I give and bequeath all my personal property on the said Moore estate, where he now resides, and also one-third part of my personal estate remaining for distribution after my estate shall have been settled up. But this provision of my will is not to take effect as to him, Lemuel L., in any wise, if he shall assert any claim, of any kind, on any account, against my estate. Should he do so, his share or portion aforesaid shall be held by my executor for distribution as hereinafter provided. I consider that he has received full share of my estate."

The fifth and last clause disposes of the residue of the estate by dividing it equally between his son Lemuel and his two daughters. "Subject to the provision as to my son Lemuel, in

case there should be any claim asserted as aforesaid by him, then the residue of my estate is to go to my two said daughters equally."

The executor appointed by this will, after qualifying, proceeded to have the personal property, other than that on the Moore farm, which had been given by the will to Lemuel, appraised. The appraisement aggregates $1,439.80, of which $700 represents purchase money bonds due the testator for an undivided half interest in a tract of land known as the "Whissen tract," containing forty-eight acres, owned jointly with his son Lemuel, which undivided interest had been sold by the testator in his lifetime to Isaac Foltz.

This suit was instituted by Lemuel L. Ryman, the son, in October, 1897, less than two months after his father's death, against his father's executor, and his sisters and brother, for the purpose of setting up and establishing a partnership between the appellant and John Ryman (deceased), his father, in the business of farming, &c., and to secure a settlement of the alleged partnership affairs, and incidentally to enjoin the sale of certain personal property then advertised for sale by the executor of John Ryman (deceased), which the appellant claimed was the property of the firm, and subject to the terms of the alleged partnership agreement.

The bill alleges that, in June, 1885, the father and son formed the alleged partnership upon the following terms: To be used in the conduct of the affairs of the partnership, the father was to contribute the use of his home farm of 180 acres, where he lived, and his two-thirds interest in the Moore farm; and the son was to contribute his one-third interest in the Moore farm, and the personal property, other than household furniture, on both places, at $1,500, claiming that the personalty had been sold to him by his father in settlement of a balance of $1,166.66, due on account of wages earned while in his father's service; that the son was to be the active partner, with exclusive

management and control of the affairs of the concern, which was to be run in the name of the son, and the father to be a silent partner; that all the property, real and personal, of each partner, except the household property of each, was to be used in the co-partnership; both families supported, and all profits, after payment of expenses, equally divided; and at the termination of the partnership, which was indefinite in its duration, each partner was to receive back the property contributed respectively by him.

This alleged agreement was not reduced to writing, but rests wholly upon oral testimony, which is not altogether satisfactory.

The operations of this alleged partnership, it is claimed, were begun in September, 1885, and the management of its business conducted by the son as active partner without formal dissolution until the death of the father in August, 1897, except the interval from October, 1891, to September, 1892, during which period the son was confined in the asylum at Staunton for the treatment of persons of unsound mind.

The prayer of the bill is that the executor of John Ryman (deceased) be restrained from selling the personal property which came to his hands under the will of his testator; that he be required to deliver the same to appellant as surviving partner; that the accounts of the partnership be settled, the debts ascertained, and the executor of the deceased partner be required to pay the alleged surviving partner whatever may be found to be due from his deceased partner on such settlement.

Answers were filed by the executors and each of the sisters of the complainant emphatically denying the existence of any such partnership as alleged. A great mass of evidence, covering one thousand pages of printed record, much the larger part of which is wholly irrelevant, has been taken. The preponderance of evidence establishes that, some time prior to the year 1891, a partnership existed between the appellant and his father; that in October, 1891, appellant was adjudged a lunatic,

and sent to the asylum at Staunton for treatment; that shortly after his discharge and return, in September, 1892, his father dissolved the partnership. This is shown by the father's refusal to recognize the acts of the son.

John Ryman's refusal, in 1893, to recognize his son as a partner, to the extent of permitting him to be threatened with criminal prosecution for using his name in a business transaction, was a distinct and positive abrogation of the partnership relation, and a declaration that the dissolution had already taken place. The appellant remained in possession of the Moore farm, two-thirds of which belonged to his father, which is sufficient to account for such dealings as subsequently took place between them. Since 1893 there is no distinct recognition of a partnership. On the contrary, there is much that negatives the idea of any such relation.

It is the duty of each partner to keep a correct account of his transactions. Where a partner fails in this regard, he will be held to the strictest account, and every reasonable presumption will be made against him.

Where there is a dispute in regard to partnership matters, and either party or both parties have been so negligent as to lose the evidence of the partnership, and to keep their accounts in such a confused way that the court cannot see what decree would do justice between the parties, the court will be unable to make a decree at all, and will dismiss the bill. Bates on Partnership, secs. 313, 909; 2 Lindley on Partnership, 809; 1 Barton's Ch. Pr., sec. 29; *Foster's Curator* v. *Rison*, 17 Gratt. 321; *Rick* v. *Neitzy*, 1 Mackey, 21; *Hall* v. *Clagett*, 48 Md. 223.

In the case last cited it is said that, if there has been a total failure to keep accounts, it affords a good reason for a court of equity to decline to supply them, without a sufficient reason or excuse for the omission. A court of equity will not grope its way in utter darkness and undertake to create and establish a claim upon mere contingencies, or the preponderance of mere

possibilities or probabilities. There is no duty devolving on it to assume the impracticable task of adjusting the relative rights of partners when the proof is utterly deficient and inconclusive.

In the case of *Foster's Curator* v. *Rison, supra,* Judge Moncure, in discussing the statute of limitations in its application to a demand for settlement of partnership account, says:

"Of course I do not mean to say that laches and lapse of time constitute no bar in any case in which the statute does not constitute one. . . . . . That it is the duty of a partner claiming that a balance will be due him upon a settlement of the partnership accounts to have such a settlement as far as possible, and, if necessary, to bring a suit for that purpose before the lapse of time, loss of evidence, and death of parties render it impossible or difficult to have a just settlement: and, if he fail to do so, he must abide the consequences of his laches, and bear the loss resulting therefrom. Doubtful questions, made so by his laches, must be solved against him."

In the case at bar the appellant claims and undertakes to prove that his father was without business qualifications; that he was the active partner, with exclusive and absolute control of all the farming operations and partnership dealings, and charged by the agreement with the duty of receiving and disbursing the firm receipts and profits, and yet he waits until his father is dead, and then brings suit demanding of his father's executor, and his sisters, a settlement. This is a most unusual attitude for a surviving partner to occupy. It would seem that a partner holding such an advantageous position with respect to the entire affairs of the partnership should himself render an account, and not demand one from the representative of his deceased partner.

It appears that appellant has kept no books, and has rendered no account of any description. The voluminous record sheds no light upon the state of the accounts between the parties, during the period of the alleged partnership. There is no re-

liable basis upon which to rest any correct ascertainment of the rights of the parties. In this respect, all is darkness and confusion. It would have been difficult to settle an account of these farming operations in the father's lifetime. Now that his lips are sealed, it would be an impossible task to adjust the relative rights of the parties with any hope of doing justice. It would seem that a partner who has kept no partnership accounts, made no settlement, handled all receipts, observed a silent acquiescence when he ought to have spoken, if at all, and who, at the end of the partnership, as the evidence shows, is in possession of much the larger part of the firm property, and who since the termination of the partnership has been enjoying the entire rents and profits of valuable real estate in which his deceased father owned a two-thirds interest, one-third in fee simple and the other for life—should be satisfied with the situation.

The bill alleges that there are debts due from the firm, and it is insisted that an accounting should be had, in order that such debts may be satisfied by firm assets. No creditors appear to have asserted any claim against the partnership. If, however, any such exist, that fact would not require the court to enter upon an impossible task. The Circuit Court has refused to order an account of the alleged partnership, because the taking of such an account is no longer practicable. It has, however, retained the case on the docket for the purpose of winding up the estate of John Ryman under the supervision of the court, and in order that there may be a convention of his creditors before the estate is turned over to the legatees under his will. Any debts for which the deceased may appear to be liable, can, therefore, be asserted when the accounts ordered are taken.

There is no error in the decree appealed from to the prejudice of appellant, and it must be affirmed.

*Affirmed.*