# Richmond.

## LEWELLING'S ADMINISTRATOR AND OTHERS v. LEWELLING.

March 10, 1910.

Absent, Buchanan, J.

1. PARTNERSHIP—*Accounting—Burden of Proof.*—In a suit to settle the affairs of a partnership the burden of proof is upon the managing partner, who kept the books of the firm.

2. PARTNERSHIP—*Accounting—Lack of Evidence—Speculative Results— Refusal of Equity to Take Jurisdiction.*—Where partners have kept no books or accounts of their partnership transactions, and any conclusion which a court of equity might reach in its efforts to settle the accounts between the partners would be purely speculative and conjectural, the court will withhold its hand and leave the parties to stand where they have placed themselves. Any other rule would open the door for fraud on the part of a surviving partner upon the estate of his deceased partner, and this is epecially true where the surviving partner had practically exclusive control of the affairs and dealings of the partnership, and was solely responsible for the lack of any books or accounts showing the status of the accounts between the partners.

Appeal from a decree of the Circuit Court of Elizabeth City county. Decree for the complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*Sidney J. Dudley, S. Gordon Cumming, Jno. W. Friend* and *F. S. Collier,* for the appellants.

*Louis C. Phillips* and *R. M. Lett,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

James W. Lewelling and Thomas L. Lewelling were brothers and in their early manhood, about the year 1873, they entered upon some sort of a partnership or joint business undertaking. No books of account were then or afterwards opened showing their affairs *inter sese,* and none were intended or supposed to have been kept. Each of the brothers took from the assets held by them in common what he needed for his personal and family expenses or uses (both being married), and what remained was regarded by them as belonging to both in common. Each brother, however, owned real estate of his own which he had inherited or derived otherwise than from the joint business. The operations they engaged in were varied. In the early years thereof they were farming and conducting a sawmill; afterwards, a livery and feed business in Hampton, Va., which was not, as it seems, a success, and they returned to farming, saw-milling and grist-milling; their last venture being a livery stable and feed business in Newport News, commenced about 1904, and conducted until the fall of 1905. During the latter part of the life of this business both of the brothers became quite dissipated, the result being a neglect of their business, and its consequent failure. Finding that their business was no longer prosperous, and that disaster in the attempt to further prosecute it confronted them, the two brothers determined to dissolve the business relationship which had so long existed between them, and to this end they prepared and executed a deed partitioning certain real estate they owned as partners in Newport News, consisting of two adjoining lots, one of which was improved by the erection of a house thereon, so that this lot was worth $1,000 more than the other. The improved lot was conveyed to James W. Lewelling, and the unimproved lot to Thos. L. Lewelling; and it is claimed on behalf of Thomas Lewelling in this litigation that it was then understood between the brothers that he

(Thomas) was to have other property to the value of $1,000, "to make good this difference."

In September of the same year, the two brothers had prepared and signed another deed partitioning equally between them what was known as the "Franklin Street property"; and later in the same month and year they went to an attorney's office, and, after going over the property which they owned jointly, piece by piece, had prepared a deed partitioning the same, making due allowance for the difference in values of the properties conveyed in the first deed, and agreed that Thomas Lewelling should have an extra lot on Chappel street, "to make good the difference." This deed was, however, not signed, because the wife of James Lewelling refused to relinquish her dower interest in the property sought to be partitioned.

In this condition of affairs, in the fall of 1905, creditors of the partnership brought actions and secured judgments against the firm, and shortly afterwards two chancery suits were instituted by these creditors to enforce the lien of their said judgments.

James Lewelling died, January 20, 1906, and afterwards, the said chancery suits were revived in the names of his widow and heirs, whereupon the two suits were consolidated, certain accounts taken and a number of decrees entered; so that a large part of the assets of the firm of Lewelling Brothers, both real and personal, was sold and the proceeds applied to the payment of some of the partnership debts.

After the dissolution of this partnership by the death of James Lewelling, and after the institution of the chancery suits mentioned, the Dabney Brokerage Co., which held a deed of trust on real estate belonging to Thomas Lewelling individually, to secure a debt of said firm, foreclosed its trust deed by a sale of the land it conveyed for $1,580.00, and the purchase money therefore was applied in part payment of the debt secured by the trust deed. Thereupon the Dabney Brokerage Co. proved in the aforesaid chancery causes their debt against the partner-

ship for the balance due thereon, and received said balance out of the funds in those causes.

In these chancery proceedings there was paid to the widow of James Lewelling $575.98 for her dower interest in the lands sold therein, but as the wife of Thomas Lewelling was dead, no dower interest attached to his interest in the lands.

At this stage in the proceedings in said chancery causes Thomas Lewelling filed his separate bill, asking for a winding up of the partnership and a settlement of the partnership affairs between him and his deceased brother, which suit was consolidated with the said chancery causes then pending, and on February 1, 1907, the three causes were referred to a master commissioner for an account and report upon the matters in issue.

On January 21, 1908, the commissioner filed his report, in which he reported adversely to all the claims set up by Thomas Lewelling against the estate of his deceased brother and partner, except three: (1) With respect to the $1,580 realized by the Dabney Brokerage Co. from the private property of Thomas Lewelling on the partnership debt of the Lewelling Brothers, after the death of James Lewelling, and the commissioner recommended that this debt be allowed in favor of Thomas Lewelling against the partnership assets of the late firm; (2) he recommended the allowance in favor of Thomas Lewelling of the further sum of $1,000 against the partnership assets, because in his opinion it was the intention of the parties when they had the deed of partition prepared, which was never signed, that Thomas Lewelling should have an extra lot on Chapel street, Newport News, of the estimated value of $1,000; and (3) that the $575.98 which had been paid to the widow of James Lewelling, deceased, for her dower interest in lands sold in said chancery causes should be charged alone against his interest in the partnership assets.

Upon the coming on of the master's said report, and in dealing with that part of it relating to the partnership transactions

of the Lewelling Brothers, with which alone we are concerned in this controversy, the circuit court decreed as follows:

"And the court proceeding as far as now practicable to settle the partnership affairs of Lewelling Brothers, doth assertain that the settlement attempted to be made by the partners in their lifetime would have been, if carried out, fair and just, had the property been partitioned subject to the partnership debts, the court doth substantially adopt the said settlement, and doth ascertain and doth adjudge that the said James W. Lewelling in his lifetime received from the said partnership a house and lot in the city of Newport News of the value of $1,000.00, and that Mrs. Henrietta Lewelling, widow of James W. Lewelling, received as dower from the proceeds of the sale of partnership property required for the payment of the partnership debts the sum of $575.98, but that Thomas L. Lewelling received for his own use from Lewelling Brothers out of a loan made by Schmelz Brothers the sum of $800.55, which said sums shall be allowed in the final settlement in these proceedings."

From that part of the decree quoted this appeal was allowed the widow and the two infant heirs of James Lewelling, deceased.

In the report of the commissioner, in reference to the transactions of the partnership of the Lewelling Brothers and the requirement of the decree of reference, that a statement and settlement of "the demands of each of the former partners against the other, arising or growing out of the transactions in any of the above entitled causes," it is said: "Under this head your commissioner would report that in order to try and arrive at some sort of satisfactory settlement of the above partnership transactions he has taken nearly two hundred pages of evidence, which he hereto appends; and has carefully examined hundreds of vouchers, checks, receipts and other papers submitted to him, as well as the papers, checks and other exhibits which were filed with the depositions. That there are really no books of the partnership concern, except such as show the open

accounts of outside people dealing with the firm.  So far as the transactions of Thomas L. Lewelling and James W. Lewelling, each with the other, go, there is practically no documentary evidence from which a balance and settlement may be arrived at with any degree of accuracy."

Further on the commissioner reported, that he had to reject a number of statements filed before him in the interest of Thomas Lewelling and adverse to the interests of his deceased brother and former partner, "except in so far as they are sustained by other records, inasmuch as the records from which they are obtained are so meagre and the evidence concerning them so unsatisfactory.  There are no books of original entry which show these various items clearly enough for your commissioner to feel satisfied of their accuracy.  It appears that the accounts were kept by Mr. Thomas L. Lewelling, and he was really the managing partner of the concern.  This being the case, the burden of proof is placed upon the partner keeping them."   Citing ample authority for that statement, viz.: 22 A. & E. Enc. L. 127 ; *Bevans* v. *Sullivan,* 4 Gill (Md.) 383.

The decree appealed from upon its face very clearly indicates that the conclusions reached adverse to appellants were purely speculative and conjectural, and that such was the case is abundantly borne out by the record.

The case of *Slater, Myers & Co.* v. *Arnett,* 81 Va. 432, is in point, where it is said:  "As the partnership transactions cannot be settled upon any basis at all rational now, the books being so badly kept as to be worthless, and there being no evidence produced by either side upon which the court could proceed towards any rearrangement of the affairs, what can be done except to leave them as the brothers did when both were living and arranging their business between themselves ?"

In *Ryman* v. *Ryman,* 100 Va. 24, 26, 40 S. E. 96, the opinion by Harrison, J., says: "It is the duty of each partner to keep a correct account of his transactions.  Where a partner

fails in this regard, he will be held to strictest account, and every reasonable presumption will be made against him.

"Where there is a dispute in regard to partnership matters, and either party or both parties have been so negligent as to lose the evidence of the partnership and to keep their accounts in such a confused way that the court cannot see what decree would do justice between the parties, the court will be unable to make a decree at all, and will dismiss the bill. . . .

"In the case last cited (*Hall* v. *Claggett*, 48 Maryland, 223) it is said that, if there has been a total failure to keep accounts, it affords good reason for a court of equity to refuse to settle them, without a sufficient reason or excuse for the omission. A court of equity will not grope its way in utter darkness, and undertake to create and establish an agreement upon mere contingencies, or the preponderance of mere possibilities or probabilities. There is no duty devolving upon it to assume the impracticable task of adjusting the relative rights of parties when the proof is totally deficient and inconclusive. . . . . .

"It appears that appellant has kept no books, and has retained no account of any description. The voluminous record sheds no light upon the accounts between the brothers during the period of the alleged partnership. There is no reliable basis upon which to rest any correct ascertainment of the rights of the parties; in this respect all is darkness and confusion. It would have been difficult to settle the account of these farming operations in the father's lifetime. Now that his lips are sealed, it would be an impossible task to adjust the relative rights of the parties with any hope of doing justice."

The rule uniformly recognized by the authorities, that a court of equity, in cases like this, can do no better than to withhold its hand and leave the parties to stand where they had placed themselves, is a salutary one, and any other would open the door for fraud on the part of a surviving partner upon the estate of the deceased partner or the rights of his heirs and distributees, especially where, as in the case before us, the surviving partner and brother of the deceased partner had practically the exclu-

sive control of the affairs and dealings of the partnership, and was alone responsible for there not being proper books and accounts kept showing with some degree of certainty the status of the accounts between the members of the partnership.

We are of opinion that in the light of the authorities and in view of the record before us, it was impossible for a court ef equity, without resort to speculation or conjecture, to afford the relief sought by appellee, Thomas L. Lewelling; therefore, his bill should have been dismissed, and this court will enter the decree the circuit court should have entered, dismissing said bill with costs to appellants, and remanding the cause for such further proceedings therein as may be necessary and proper, not in conflict with the views herein expressed.

*Reversed.*