JOURNAL ENTRY AND OPINION
{¶ 1} James A. Hofelich appeals from an order of the trial court that granted summary judgment in favor of his former law firm partner, John F. King, and subsequently denied Hofelich's own motion for partial summary judgment. Hofelich contends that the trial court erred in failing to find that Ohio Partnership Law requires an accounting for contingency fees collected after dissolution. He additionally maintains that contingency fee cases pending at the time that a law partnership is dissolved constitute partnership property, and that it was error for the trial court to deny his partial motion for summary judgment and find otherwise. We affirm.
 {¶ 2} The record reveals that in 1992, James A. Hofelich ("Hofelich") and John F. King ("King") formed a law firm known as Hofelich King, with offices located in downtown Cleveland. Sometime in 1998, the parties had a major disagreement and discussed the dissolution of the partnership. Although their *Page 2 
respective issues were never resolved, Hofelich and King continued to operate the partnership for the next few years. After approximately ten years, Hofelich and King ended their partnership in April, 2000. Since several cases remained pending at the time of dissolution, the active cases were divided between Hofelich and King. King retained thirty cases and Hofelich kept eleven.
 {¶ 3} Between April 10, 2000 and June 1, 2000, the parties attempted to wind-up the affairs of the partnership. As a consequence, each wrote numerous letters and memorandum to the other concerning the proposed dissolution. On April 18, 2000, King wrote a memo to Hofelich that stated:
 "We have agreed that our partnership has terminated, however, we have not specified a date. I believe we finalized our decision on Monday, April 10, 2000, therefore, it is my understanding that we have begun separate practice as of Monday, April 10, 2000. As we discussed, I do not believe that we have any matters or cases where it is uncertain who will continue to represent the client and you have agreed. I have separated the case sheet binders into your case binder and my case binder and I am in the process of separating the files into separate cabinets. The cases that are already settled will be processed as Hofelich King cases and the fees will be used to pay past and current expenses and the remainder will be divided equally.
 * * *
 From April 10th forward, we will assume liabilities for our own actions and will hold each other harmless for professional liability incurred on or after April 10, 2000."
 {¶ 4} Hofelich responded to this memo the same day and, per King, did not take exception to the assertion that each party knew which clients they would be representing. On April 19, 2000, Hofelich wrote to King: *Page 3 
 "Regarding your latest Memo, I agree that we will hold each other harmless for our professional activities after April 10, 2000 until we wind up the partnership on May 31, 2000 or June 1, 2000."
 {¶ 5} Subsequently on May 31, 2000, the parties vacated the firm offices located in BP Tower.
 {¶ 6} Approximately four years later on June 4, 2004, Hofelich filed an eight-count complaint in common pleas court alleging, among other causes of action, breach of agreement and conversion, and sought a jury trial. King moved for summary judgment; Hofelich, likewise, moved for partial summary judgment. The trial court granted King's motion and denied Hofelich's motion. Hofelich appeals from this order in two assignments of error which state:
 "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.
 II. THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT."
 {¶ 7} As both assignments of error relate to the question of summary judgment, we address them together for purposes of appeal.
 {¶ 8} Appellate review of summary judgment is de novo. Grafton v. OhioEdison Co., 77 Ohio St.3d 102, 1996-Ohio-336. The Supreme Court of Ohio, in Zivich v. Mentor Soccer Club, 82 Ohio St.3d 367, 1998-Ohio-389, superseded on other grounds, set forth the standard that must be applied before summary judgment can be granted. *Page 4 
 "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." (Citations omitted.)
 {¶ 9} Once the party moving for summary judgment has satisfied its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E);Mootispaw v. Eckstein, 76 Ohio St.3d 383, 1996-Ohio-389. Any doubts must be resolved in favor of the nonmoving party. Essex Ins. Co. v. Mirage onthe Water, Cuyahoga App. No. 87507, 2006-Ohio-5023.
 {¶ 10} We first note that the terms of the partnership agreement were never memorialized in writing. The record indicates that the parties' initial agreement was to share profits and losses, two thirds to Hofelich and one third to King. King Aff. paragraph 9. In subsequent years, the parties agreed to a sixty percent/forty percent division, with Hofelich receiving sixty percent. King Aff. paragraph 10. Ultimately, the parties agreed to an even fifty/fifty percent division. King Aff. paragraph 10. This final division appears to have remained intact through the dissolution of the firm.
 {¶ 11} The record contains an April 2000 memorandum that King sent to Hofelich which outlined some alternatives to continuing the partnership. Although *Page 5 
several memos were exchanged concerning the proposed dissolution, the April 19, 2000 memorandum from Hofelich to King concerning affairs post-dissolution stated:
 "Regarding your latest Memo, I agree that we will hold each other harmless for our professional activities after April 10, 2000 until we wind up the partnership on May 31, 2000 or June 1, 2000."
 {¶ 12} Based on this memorandum, King asserts that Hofelich knew that he was surrendering any claim that he may have had against King for professional activities, including any claim for future fees eared by King in the "disputed" cases.
 {¶ 13} Legally speaking, "[a] hold harmless agreement is `[a] contractual arrangement whereby one party assumes the liability inherent in the undertaking, thereby relieving the other party of the responsibility.'" Valhal Corp. v. Sullivan Assocs., Inc. (C.A. 3, 1994),44 F.3d 195, 202, quoting Black's Law Dictionary 658 (5 Ed. 1979).
 {¶ 14} When Hofelich was questioned about his "hold harmless" statement at deposition, the following exchange took place:
 "Q: So you believe that professional activities related to all activities related to your practice of law with Mr. King?
 A: Correct. You know, I also think this is a fair statement of the law.
 Q: You expected after April 10th
2000 that he wouldn't be liable to you and you wouldn't be liable to him for any professional activities?
 MR. KOBERNA: Objection.
 A: As provided by the law, yes. I think this is what the partnership law is anyways." *Page 6 
Hofelich deposition at 114.
 {¶ 15} Although maintaining that King was not liable to him for any professional activities following the dissolution, Hofelich maintains that he is nonetheless entitled to a fifty-fifty split of any subsequently earned fees. He cites to Ohio partnership law as mandating that partners must account to each other for partnership contingency fees and expenses recovered after the dissolution of the partnership unless otherwise agreed by the parties.
 {¶ 16} R.C. 1775.21, which establishes the right to an accounting, does not require the windup or dissolution of the partnership. R.C.1775.42, in contrast, provides a right to seek an accounting upon dissolution of a partnership. If such an accounting is sought, R.C.1775.17(A) to (H) provides a set of rules for the court to follow in determining the rights and liabilities among partners when rendering an account.
 {¶ 17} Further, R.C. 1775.20(A) provides:
 "Every partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property."
 {¶ 18} Based on these guidelines, a party seeking an accounting, or in this case Hofelich, must introduce sufficient evidence to enable the court to make a definitive accounting that states the "`true condition of [the] affairs'" between the partners. Oglesby v. Thompson (1898), 59 Ohio St. 60, 64, quoting Myers Co. v. *Page 7 Arnett (1866), 81 Va. 432. See, also, Dunn v. Zimmerman, 69 Ohio St.3d. 304, 1994-Ohio-351. In the absence of sufficient proof, the court must leave the parties where they stand. Id.
 {¶ 19} Under the plain language of R.C. 1775.20(A), and without any agreement to the contrary, both parties would be required to account for the fees received for contingency fee cases still pending at the time of dissolution.
 {¶ 20} During Hofelich's deposition, the following exchanges took place:
 "Q: In your memorandum that we've been referring to earlier, April 18, 2000, which has been marked as Plaintiff's exhibit 4, anywhere in that memorandum do you say, by the way, or words to that effect, I am entitled to 50 percent of any fees that you receive in the cases you are taking with you?
 A: No.
 Q: Can you identify for me by exhibit number which exhibit, if any, says that the parties are going to split fees 50/50 on the cases that Mr. King took over?
 A: No."
Hofelich Deposition at 101-103.
 "A: He divided the cases and I didn't disagree.
 Q: All right. What was his basis for dividing the cases?
 A: I don't know.
 Q: Why didn't you disagree?
 A: I didn't see anything to disagree about. *Page 8 
 Q: You were satisfied that the cases he took with him he could have?
 A: Have?
 Q: He could take with him?
 A: Yes."
Hofelich deposition at 77.
 {¶ 21} It is not disputed that upon dissolution, King unilaterally divided the cases between the parties. While Hofelich asserts that he is entitled to half of the monies earned on those cases that King took upon departure, he has failed to properly support such an assertion. Conversely, the record contains several indications that Hofelich: (1) knew the cases were divided upon dissolution and failed to object, (2) sent King a hold harmless memorandum relieving him of all liability from professional activities and, (3) failed to make a claim for any owed monies until several years after the dissolution of the partnership.
 {¶ 22} Further, as for any money that Hofelich may owe King for cases that Hofelich maintained after the dissolution, Hofelich testified that he did not place those monies in separate accounts. Instead, Hofelich repeatedly stated at deposition that the money was "available" but that it was in other forms, including common stocks in both his and his ex-wife's name. Hofelich deposition at 135-137.
 {¶ 23} The record is clear that Hofelich failed to object to the division of cases, failed to request an accounting, and also failed to turn over any monies to King which were due under Hofelich's version of the dissolution. Hofelich has therefore *Page 9 
failed to properly support his contentions in the manner necessary to defeat King's motion for summary judgment.
 {¶ 24} As such, Hofelich's first assignment of error lacks merit.
 {¶ 25} Regarding Hofelich's assertion that the trial court erred in denying his own partial motion for summary judgment, we likewise find no merit in this assignment.
 {¶ 26} Hofelich cites to R.C. 1775.17 as authority that King was mandated to account for any benefit that he received and hold any profits. Hofelich, as previously discussed, did not hold himself to this same standard. The evidence submitted to the trial court was that all pending cases were divided among the parties, therefore alleviating any obligation under R.C. 1775.20(A) to account for the fees. As previously discussed, the record is replete with evidence that the cases were divided without objection from Hofelich. There is further evidence that business proceeded as usual for years without any request or notification from Hofelich.
 {¶ 27} Although Hofelich submits that there are issues of fact concerning the correspondence between the parties as indicative of altering codified partnership law, based on the evidence presented at the trial court, we find that no such issues of fact remain.
 {¶ 28} The decision of the trial court is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 10 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 FRANK D. CELEBREZZE, JR., A.J., and CHRISTINE T. McMONAGLE, J., CONCUR *Page 1