NILES, Appellant, v. LEE, Respondent.

(140 N. W. 259.)

1. **Appeal—Instructions—Special Findings—Harmless Error.**

Special findings of a jury in an equitable action being merely advisory, error cannot be predicated upon an instruction given to the jury thereon.

2. **Partnership—Joint Adventure—Evidence.**

In an action for an accounting as partners, held, the evidence fails to show a partnership relation, and shows a joint adventure.

3. **Joint Adventurers—Mutual Duties of.**

Joint adventurers owe to each other all the obligations of fidelity, fair dealing, and truthfulness that are due between partners.

4. **Deed—Conveyance to Co-adventurer—Burden of Proof—Pleading.**

While as matter of law, where one occupying a fiduciary or confidential relation to another procures a conveyance from him, the burden is upon grantee to show that he acted with utmost good faith and that the conveyance was fair, yet this rule does not apply where complaining party fails to plead or

prove that the deed was procured under circumstances entitling him to have it set aside, or to ask that it be set aside.

**5.   Mortgage—Absolute Deed as Security—Sufficiency of Evidence.**

Evidence, in an action for an accounting between joint adventurers, **Held,** sufficient to sustain a finding that a conveyance from one to the other was given with intent that it should be an absolute conveyance, and not as security.

**6.   Deed—Conveyance Absolute—Sufficiency of Evidence—Equities Between Co-adventurers.**

Evidence, in an action for an accounting between joint adventurers, **Held,** sufficient to show that a deed by plaintiff to defendant of land which was part of the subject-matter of the adventure, was given as an absolute conveyance and not as security.

(Opinion filed March 18, 1913.)

Appeal from Circuit Court, Clay County. Hon. ROBERT B. TRIPP, Judge.

Action by William E. Niles against Andrew E. Lee, for an accounting upon an alleged partnership. From a judgment for defendant; and an order denying a new trial, plaintiff appeals. Affirmed.

*E. R. Winans, Payne & Olson,* and *R. D. Kittredge,* for Appellant.

"The intention which controls in determining the existence of a partnership is the legal intention deducible from the acts of the parties, and, if they do a thing which in law constitutes a partnership, they are partners. Although their purpose was to avoid the creation of such relation." 30 Cyc. 360; 1 Story's Eq. Jur. 218; Robbins v. Hope, 57 Cal. 493-497; Gamble v. Loffler, (S. D.) 133 N. W. 288; 8 Cyc. 564; 1732 and 1733 Rev. Civ. Code.

All transactions between such persons are carefully scrutinized by the courts; and when one has been induced to make a conveyance to a person occupying any fiduciary or confidential relation to him, the burden is upon the grantee to show that he acted with the utmost good faith, and that the transaction was fair and equitable. Butler v. Prentiss, 158 N. Y. 49; Beach v. Wilton, 244 Ill. 413-422; Montena v. Hoffman, 249 Ill. 56; Hensan v. Cooksey, 237 Ill. 620-626; Hoeb v. Maschinot, 131 S. W. 23; Smith v. Moore, 55 S. E. 257, 7 L. R. A. (N. S.) 684; Nelson v. Brown, 51 So. 360; Payne v. Payne, 107 Pac. 148; Massey v. Rae, 121

N. W. 75; Peterson v. Budge, 102 Pac. 211; Jones v. Thomas, 117 S. W. 1177; Thied v. Startzman, 77 A. 666.

The undisputed evidence proves conclusively the existence of a relationship involving every element of a partnership, viz.: an agreement to enter into a joint business enterprise and to bear the expenses and share the profits and losses equally between them. Moreover, the arrangement involved a continuous course of business.

If, however, it be contended that this constituted a joint adventure rather than a co-partnership, we have only to say that joint adventurers, as between themselves, are bound by the same obligations of fidelity, fair dealing and truthfulness as in the case of a partnership proper. Gamble v. Loffler, 133 N. W. 288.

*Gunderson & Gunderson,* and *French & Orvis,* for Respondent.

If plaintiff's counsel means to convey the idea that the twelve cases cited by him on page 21 of his brief, or that other respectable authorities, hold as a proposition of law, that in all transactions between partners or joint adventurers, or between persons between whom a confidential relation exists, the burden of proof in the first instance and in the absence of any other fact, is upon the vendee or grantee to show that such transactions are in good faith on his part, we dispute the proposition. The burden of proof in such a case is not thrown upon the vendee or grantee without some showing of facts upon the part of the vendor or grantor which, under well recognized principles of equity, make it incumbent upon the vendee or grantee to show that in fact he acted in good faith, and was guilty of no fraud, or concealment, or coercion, or undue influence. 13 Cyc. 582, 585-6-7, and many cases sustain this principle.

The burden of proof of showing the good faith of transactions between persons where confidential relations exist is not thrown upon a defendant or vendee or grantee except in those cases where it is first proven that a condition of superiority is held by one of the parties over the other.

In Apland v. Pott, 16 S. D. 185, this court held that the charge of a trial court in an equity case in submitting questions to the jury for special findings is not subject to review, the findings being merely advisory.

WHITING, J.  Plaintiff's and appellant's first cause of action, being entirely unsupported even by his own evidence, needs no attention upon this appeal.  For his second cause of action he alleged that he and defendant entered into "a partnership for the purpose of purchasing, holding, improving, operating, and · of mortgaging, selling, and conveying a certain line of railroad"; that, as such partners, they "purchased and acquired, and are now the joint owners" of, the said railroad, which is of great value; that they have both expended considerable money in connection with said partnership business; that plaintiff has faithfully. and constantly given his time, labor, and skill to said business, without compensation; that on or about May 1, 1909, "plaintiff was induced to and did make a purported assignment of his interest in said property to defendant"; that the same "was procured * * * by reason of his false and fraudulent representations to the effect that he desired the same as security for certain obligations of the partnership, for which he was liable, and also for the purpose of enabling him  * * *  to negotiate a sale of partnership property for the benefit of the copartnership"; that plaintiff, relying upon such representations, did execute and deliver said assignment; that defendant, disregarding plaintiff's rights, is claiming to be the sole owner of said partnership property, and threatens to sell and dispose of the same for his sole use and benefit; and that, unless he is restrained from so doing, he will so sell and convey the same and apply the proceeds to his own use, and thereby cheat, wrong, and defraud plaintiff by bringing to plaintiff irreparable injury and damage, for which he has no adequate remedy at law. Plaintiff prayed that there be a decree entered dissolving such partnership; that an accounting be had of the partnership dealings and transactions; that, if, necessary, the partnership property be sold and the surplus remaining after payment of the partnership debts be divided between the parties thereto; that in the meantime the defendant be restrained from disposing of the partnership property or conducting any business pertaining thereto; and that a receiver be appointed for the assets of such partnership and for other equitable relief.

Defendant denied entering the partnership, but alleged the details of a transaction between the parties hereto amounting to a joint adventure under which they were to purchase certain railroad

property, and to hold the same until a corporation could be organized to take over the same. Defendant alleged fraudulent representations upon the part of plaintiff, by which defendant was induced to enter into such enterprise; that defendant was compelled to put in large sums to protect himself; that the money advanced by him was used upon purchase price and for improvement to property; that all the moneys that went into the purchase and improvement of said property were advanced by defendant; that plaintiff had made false reports in relation to the condition of the property purchased by the parties hereto, and of the sums expended thereon; that defendant, having ascertained the fraud that had been perpetrated on him both in false representations and in the misappropration of money by plaintiff, and that plaintiff had no money invested in said enterprise, requested of plaintiff that he convey to him all interest which plaintiff had in and to said property; and that plaintiff did convey to defendant by deed all of the said property involved in the said joint adventure. By way of counterclaim, defendant realleged the matters set forth above, and further alleged that he is the sole and absolute owner of said property. And defendant prayed that the relief asked for by plaintiff be denied, and that defendant be adjudged the owner of the property. Plaintiff replied; the reply amounting to a denial of the allegations of the counterclaim.

The action was tried before the court and a jury. Certain special findings were returned by the jury, and the court afterwards made its findings of fact and conclusions of law, which findings, so far as they related to the matters passed upon by the jury, were in harmony therewith and were favorable to the defendant. Upon these findings and in conformity with the conclusions of law, judgment was entered adjudging defendant to be the sole owner of the property, and enjoining plaintiff from interfering therewith. From this judgment and an order overruling a motion for new trial, this appeal is taken.

Numerous errors are assigned in the rulings of the trial court upon the admission or rejection of evidence, and in the instructions of such court to the jury. Appellant also specifies numerous particulars wherein he claims the evidence does not support the findings of the trial court. We have read carefully all the evidence appearing in the abstract and in the two additional abstracts, and

have noted with care each and every ruling admitting or rejecting evidence, and we are satisfied that there was no error, prejudicial to the appellant, in any of such rulings. Such rulings are not, to our minds, of sufficient importance to justify their separate consideration in this opinion. The evidence received fairly presents the merits of this cause.

[1] So far as the assignments attacking the instructions of the court to the jury are concerned, we need only say that this was an equitable action triable to the court, in which the special findings of the jury were, at best, merely advisory, and no error can be based upon the instructions. Aplund v. Pott, 16 S. D. 185.

This leaves for our consideration the question whether or not the findings of the trial court are supported by the evidence herein. It is not claimed that such findings do not support the conclusions and judgment. The trial court made very full and complete findings of fact. Space forbids our quoting the same in full herein or making any extensive review of the evidence as it bears upon said findings; furthermore, no useful purpose could be subserved by such a review. The one all-important question—in fact, the ultimate question before both the trial court and this court for determination—is as to what was the purpose for which the deed was given and the legal effect of same. The entire history of the other transactions between the parties hereto is material only as it throws light upon the purpose and intent for which such deed was given; in other words, is material only as it throws light upon this ultimate question before us for determination. But, while no complete review of the evidence will be undertaken, we will briefly call attention to some facts appearing from the record herein. Prior to November, 1908, the parties hereto had been acquainted for several years. Respondent was a merchant engaged in the mercantile business at Vermillion, S. D. Appellant was formerly a traveling salesman, whose business, as such, brought him to respondent's home town. He was in November, 1908, a resident of Chicago, and engaged in the business of promoting various enterprises. A warm friendship existed between these parties, and respondent had absolute confidence in the integrity of appellant. A railroad located in the state of Michigan was sold at receivers' sale; the terms of said sale requiring that $10,000 should be paid before the confirmation of such sale, $500 of which had to be paid before

acceptance of bid as an evidence of good faith. The total purchase price was the sum of $60,000, of which $15,000 was to be paid within 90 days from the date of confirmation of sale, $15,000 within six months from date of confirmation, and $20,000 within nine months therefrom; all deferred payments to bear interest. Appellant and certain other parties had conceived the idea of purchasing this property at such sale, organizing a railroad corporation to take over the property, selling the stock and bonds of such corporation, reimbursing themselves for all moneys advanced, and retaining for themselves, as profits on the deal, a large part of the stock of such corporation. The other parties not having the money necesary, appellant advanced the $500 and immediately advised the respondent in relation to this matter, representing that it offered an opportunity of large profits upon a small temporary investment, and further representing that no further investiment than the $10,000 would be due for a period of six months, within which he was confident the corporation could be organized, the original investors get back their money, and ultimately reap large profits from the enterprise. He proposed to respondent that they advance the first payment and become the purchasers of such property. Respondent became interested and apparently temporarily blinded by visions of wealth to be easily acquired, as a result of which he agreed to join with appellant in this enterprise.

[2]. The agreement of these parties did not create a partnership relation, but they did become what is known in law as joint adventurers, and, as such owed to each other, from that time forward, all the obligations of fidelity, fair dealing, and truthfulness that are due even between partners. Gamble v. Loffler, 28 S. D. 239, 133 N. W. 288. The evidence clearly shows that, so far as respondent is concerned, he put full faith and confidence in the appellant, and in every respect fulfilled his obligations as a joint adventurer with appellant; and there is no claim by appellant of any misrepresentation or fraudulent act upon the part of respondent prior to May 1, 1909, the time of the giving of the deed. Upon the other hand, it fully appears that appellant, even though he may have originally entered into this joint adventure in perfect good faith toward, and with the intention of dealing openly and fairly with, the respondent, soon entered upon a course of concealing from respondent the true status of the transaction, and finally, for

the probable purpose of keeping respondent from becoming discouraged and abandoning the deal, misrepresented the true situation, and even misappropriated moneys advanced by respondent to be used in such joint adventure. Appellant being unable to raise his half of the first payment of $10,000, respondent advanced him $1,500, taking his note for the same, which note was due in a short time, but has never been paid. Appellant claimed to have furnished from his own moneys the other $3,000 which, with the $500 originally paid, would make up his one-half of the original payment; but it clearly appears that a large part of this $3,000 was wrongfully and fraudulently taken out of certain moneys which appellant induced respondent to advance for the purpose of improving the property purchased. A corporation was organized for the purpose of taking over this railroad whenever the corporation's stock and bonds could be floated. The matter of finding purchasers for such stock and bonds seems to have been left almost exclusively with appellant. There is nothing to show but that he earnestly strove to negotiate such stock and bonds; and there is no evidence to show that there was any intent upon the part of appellant to freeze the respondent out of the transaction. Upon the other hand, he continued to hold forth bright prospects of floating such stock and bonds, and his representations were such that respondent, though with much hesitancy, continued to advance, from time to time, large sums of money for the purpose of improving the line of road and making the second payment.

It clearly appears that appellant's sole aim lay in being able to keep respondent inspired with sufficient hope to lead him to advance the money necessary to hold onto the enterprise, and that he was willing, if necessary, to resort, and did resort, to misrepresentation to achieve the desired result. The efforts to negotiate the stock and bonds were fruitless. The money invested was raised upon notes given by respondent, and upon a joint note given by him and appellant, which joint note respondent has since been compelled to pay. Along in March, 1909, respondent became not only fearful that they were going to be unable to float the stock and bonds of the corporation, and that it would therefore be necessary for him to invest the money necessary to meet the other payments or else lose all he had invested or become responsible for,

but he became suspicious that appellant had not been dealing honestly with him; and finally, in the latter part of April, 1909, he demanded of appellant a statement showing in full the disbursements of moneys that had been advanced for this joint adventure. A statement was furnished, but, being still suspicious that it was not correct and that matters were not as they had been represented, he visited the railroad property and made an investigation which satisfied him that appellant had not only been deceiving him, but had misappropriated a part of the funds advanced by him. He had two copies of a deed prepared, and then returned to Chicago, and, going to the office of appellant, induced appellant to execute and deliver to him the deed and a copy thereof. The evidence as to what took place at the time of, and in connection with, the execution and delivery of these deeds is very conflicting; and although appellant's version is corroborated by the testimony of the notary who took the acknowledgment of the deed, and by that of a party who was witness thereto, yet respondent's version is corroborated by the testimony of the stenographer employed in appellant's office; and in view of the fact that appellant's own testimony shows him guilty of gross misrepresentation in his dealings with respondent, and that such testimony, taken in connection with the other evidence received, shows him guilty of misappropriating the funds advanced by respondent, the court was fully warranted in its findings that the transaction was as claimed by respondent. To have found otherwise it would have been necessary for the court to have found that respondent, concerning whose conduct in this transaction, up to the time of the giving of said deed, there had been not the slightest suspicion of misrepresentation, fraud, or dishonesty, had, at a time when it seemed doubtful whether there ever would be any profits from the transaction, and therefore doubtful whether a deed absolute would be of any greater benefit to him than one given as security, fraudulently procured from appellant a conveyance which purported to be an absolute conveyance of appellant's interest, though assuring appellant that he sought the deed only as security, and for the purpose of enabling him to sell the property to a prospective purchaser, and moreover had come into court and perjured himself. Under the whole record herein, it is inconceivable that respondent was guilty of any such conduct.

The story, as told by respondent and as found by the court,

was that respondent presented the said deed to appellant, and "told him I had been in Michigan and had learned about how terrifically he had deceived me in every particular; that I had found a large number of bills that he had said had been paid still unpaid, and I was dunned for them. I then told him I * * * had a deed prepared to transfer all his right, title, and interest in the railroad property to me, and that he had not a dollar invested in it whatever." Respondent testified that appellant made no objection to executing the deed; that he, immediately after such deed was executed, demanded that appellant surrender all books and papers in his possession relating to said railroad and the corporation that had been organized, and resign the office which he held in said corporation. It appears appellant did turn over the books and papers relating to this matter, and did make out and deliver a written resignation resigning his office in said corporation. It is appellant's contention, as hereinbefore noted, that this deed was given merely as security and to enable respondent to make a sale of the property to a prospective purchaser; that it was a trust deed; and appellant, in his brief, has earnestly contended that, owing to the trust relation existing between the parties hereto, the deed in question should be held void.

[3] He has cited numerous authorities in support of the proposition that, where a person, occupying a fiduciary or confidential relation to another, procures a conveyance from him, the burden is upon the grantee to show that he acted with the utmost good faith, and that the transaction was fair and equitable. There can be no question of the correctness of this rule of law; but it has no application either to the issues raised by the pleading or to the facts shown by the evidence. If appellant had pleaded the giving of a deed absolute, and that it was procured by respondent under circumstances that would entitle him to have same set aside by a court of equity, and had asked for the court to set it aside, then we would be confronted with the question whether, under the facts proven, he was entitled to such relief.

[4] The sole issue, under the pleadings, so far as this deed is concerned, is whether it was given with the intent and purpose that it should be an absolute conveyance, or whether it was given with the intent and purpose that it be held merely as security and in trust. Upon this issue the court rightfully found with respondent.

The court having found the facts as it has, the rule of law contended for by appellant could only be applied if appellant had assigned the insufficiency of the findings to support the judgment.

[5] But even if there had been such an assignment, and thus this question were properly before us, we should have no hesitancy in holding that, under all the circumstances surrounding this transaction—the fraudulent conduct of appellant; the fact that, after being charged with moneys misappropriated, he had little, if any, money in this adventure; the fact that respondent was the only responsible party, and would have to pay the outstanding joint obligations of himself and appellant; the fact that large sums had yet to be advanced to consummate the purchase of the property and get clear title thereto; the fact that it had been impossible to float the stock or bonds of the corporation; the fact that all further sums paid would have to be advanced by respondent; and especially in view of the fact that, at the time such deed was given, both parties would have been glad to have sold the property for less than the amount that had been put into same, or for which they had become obligated—there was nothing inequitable in respondent's taking from appellant an absolute conveyance of the subject-matter of their joint adventure.

The judgment and order appealed from are affirmed.