### BURGET v. CRANSTON et al.

(Circuit Court of Appeals, Sixth Circuit.   March 14, 1924.)

No. 3701.

**1. Appeal and error ⬳1012(1)—Trial court's conclusions on facts accepted unless evidence preponderates to contrary.**

The trial court's conclusion upon the facts must be accepted by the Appellate Court unless the evidence decidedly preponderates to the contrary.

**2. Evidence ⬳408(1), 411—Parol evidence held admissible to explain writing on theory that it was receipt or incomplete contract.**

In a suit for an accounting involving the issue of whether plaintiff and defendants entered into a joint adventure to purchase land contracts with money contributed by them, or the plaintiff merely paid the defendants a certain sum of money and authorized them to buy contracts for her therewith, parol testimony as to the actual arrangement between them was admissible notwithstanding writing stating that defendants had received certain sum from plaintiff for the purchase of contracts, and that plaintiff was to receive "first money that matures as she wishes to make a mortgage on her house and others," since such writing, if a receipt, was open to explanation, and, if a contract, was so incomplete as to admit evidence of surrounding and explanatory circumstances.

**3. Joint adventures ⬳1—Evidence held to sustain finding as to existence of joint adventure.**

In a suit for an accounting involving the issue of whether the plaintiffs and the defendants entered into a joint adventure to purchase land contracts with money contributed by them, or the plaintiff merely paid the defendants a certain sum of money and authorized them to buy contracts for her therewith, evidence *held* to sustain trial court's finding that the transaction was a joint adventure.

**4. Appeal and error ⬳994(3)—Credibility of witnesses for trial court.**

The credibility of witnesses was for the trial court.

**5. Joint adventures ⬳1—Transaction held a "joint adventure."**

Where four persons contributed certain sums of money toward a fund for the purchase of land contracts under a contract providing for a division of the profits in proportion to the respective capital contributions, and entitling named person to the benefit of the first maturity to enable her to procure a loan on certain property, the transaction was a "joint adventure" (citing Words and Phrases, First and Second Series, "Joint Adventure").

**6. Trial ⬳11(3)—Transfer from equity to law docket held properly refused.**

A suit for an accounting of profits and for special damages resulting from an investment of a certain sum made by plaintiff under an agreement with defendants for the purchase of land contracts was a suit in equity, and plaintiff's application for transfer to the law side of the court with a demand for a jury trial was properly refused.

**7. Equity ⬳392—Rehearing properly denied where term at which decree rendered expired.**

A petition for rehearing filed in the District Court by leave of the Circuit Court of Appeals was properly denied when the term at which the decree was rendered expired before the appeal therefrom was taken.

**8. Equity ⬳455—Leave to file bill of review in discretion of court.**

Leave to file a bill of review is not a matter of right, but is within the sound discretion of the court to which the application is made.

**9. Equity ⬳447(2)—Character of newly discovered evidence to warrant leave to file bill of review stated.**

Newly discovered evidence, to warrant court in granting leave to file a bill of review, must be controlling, not merely cumulative.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**10. Equity ☞456—Leave to file bill of review may be denied if court deems it unadvisable.**

An application for leave to file a bill of review may be refused although the facts, if admitted, would change the decree, when the court, looking to all the circumstances, deems it productive of mischief to innocent parties, or for any other cause unadvisable.

Appeal from the District Court of the United States for the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit by Elmina L. Burget against C. M. Cranston and others. From a decree giving her insufficient relief, the plaintiff appeals. Affirmed.

Mrs. E. L. Burget, of Akron, Ohio, in pro. per.

Ben. B. Wickham, of Cleveland, Ohio (Boyd, Cannon, Brooks & Wickham, of Cleveland, Ohio, on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

PER CURIAM. Appellant brought suit against the three appellees and the Co-Operative League of America (hereinafter called the "League") for an accounting of profits and special damages resulting from an investment of $1,000 made by her in November, 1919, under an agreement with appellees Taylor and C. M. Cranston, for the purchase of certain "land and home purchasing contracts" which had been issued by the League. The purchased contracts were assigned to appellee E. B. Cranston. The League was not an indispensable party, was not served with process, and did not appear. On hearing upon testimony in open court upon the issues joined by the petition and the answers of appellees Cranston (Taylor had dropped out and did not defend), the trial court found that the relation between the four parties constituted a joint adventure, those concerned being entitled to share in the profits thereof according to their respective financial contributions to the enterprise. Decree was rendered for appellant against the appellees Cranston for profits in the ratio which her contribution bore to the total contributions, the claim of special damage being denied.

Under the League contracts (which were assignable upon payment of a transfer fee) the holder, after making a certain number of monthly installment payments (the contract thus being "matured"), was entitled, in order of priority among subscribers to the series, to exercise a so-called "loan privilege," viz. to obtain at 3 per cent. interest a real estate loan for certain specified purposes in amount not exceeding the "face value" of his contract, and to receive a credit upon the loan equal to the aggregate payments actually made on the contract; the League itself, however, agreeing, on demand of the contract holder, to sell such privilege, and from the proceeds to pay the holder a sum equal to the payments already made on the contract, plus any "premium" received on the sale, less 10 per cent. of the premium, as compensation for making the sale. The contracts were subject to forfeiture for nonpayment of monthly installments.

The total net profits from the transactions in question, as found by the District Court aggregated $3,060, of which amount $2,430 was realized by appellees Cranston through selling premiums (at the rate of

$180 net per $1,000) on $13,500 face value of matured contracts, the remaining $630 representing the selling premium of the $3,500 of contracts, of which appellant was given the benefit, in connection with a loan in the latter amount obtained by her from the League. The court found the aggregate capital contributions of the parties (including appellant's $1,000) to be $4,250; credited appellant with her $1,000 contribution and with $719.10 as a percentage of the total profits (about 23½ per cent.) in the ratio which her contributed capital bore to the total contributed capital;[1] charged her with the selling premium of $630 above mentioned and with $350 (returned to her in the making of the loans) of payments which had been made from contributed capital on the $3,500 of contracts awarded her; and entered decree in appellant's favor for the resulting balance of $739.10, with interest from August 12, 1920, that being the date when the last of the purchased certificates were sold, and at which the appellees were held obligated to account.

Appellant contends that there was no joint adventure, but that in effect appellees C. M. Cranston and Taylor (the latter of whom wrote contracts for the League) were to buy for her such an amount of contracts as her $1,000 would buy.

On the basis that payments amounting to 10 per cent. of contract face were requisite to "loan privilege," $1,000 would provide for $10,000 face value of contracts. Appellant insists that under the evidence she was entitled to all the profits from that amount of first maturities, instead of from only the $3,500 of contracts awarded her. She also alleges that, in reliance upon her eligibility to procure loan privileges on $5,000 of contracts maturing on or about March 1, 1920, she made down payments upon the purchase price of certain properties in Wilmington, Del., bought in January and February, 1920, agreeing to complete payments in April, 1920, but that she failed to do so on account of defendants' refusal to perform the agreement, and so lost her down payments amounting to $750. The contention that more profits were made than were accounted for will be later referred to.

[1] Considering the case as originally presented in the District Court, and which resulted in the decree appealed from: The testimony was taken before the trial judge in open court, each of the four parties testifying. The court's conclusions upon the facts must be accepted by us, unless the evidence decidedly preponderates to the contrary. City of Cleveland v. Chisholm (C. C. A. 6) 90 Fed. 431, 434, 33 C. C. A. 157; Oehring v. Fox Co. (C. C. A. 6) 272 Fed. 833, 836.[2]

---

[1] The court rejected defendants' contention that the total contributed capital was $7,125, holding all above $4,250 merely advancement by defendants, to the return of which they were entitled, but not to be taken into account in dividing profits. Defendants do not appeal.

[2] That this suit is an equity proceeding is clear. An accounting from the three appellees was asked respecting the expenditure of appellant's money placed by her in their hands, and of the disposition of the loan privileges; also that appellees be required to assign to appellant such further maturities as she is entitled to, and that the League be enjoined from paying money to or having further dealings with appellees with reference to the contracts in question, and for general relief. But, if, as appellant contends, her action

The trial court's conclusion of existence of joint adventure, whose profits were to be divided in proportion to the respective contributions, is supported by competent testimony.[3]

Appellant testified that appellees C. M. Cranston and Taylor told her that "with their money and my money they wanted to buy these contracts," and that $3,000 was all that was required to buy them, and produced a writing of date May 1, 1920, said to have been issued by appellee E. B. Cranston to the League, authorizing it to use $3,500 of the matured contracts, of which verbal notice had been given, as a first mortgage loan on appellant's property in Canton. The League's verbal notice referred to $12,000 of matured contracts. It turned out that there were but $8,000. Taylor testified that appellant said she would go in with the others if she could have the first loan for her Canton property, and that the conversation "closed by her saying that she would come in with us." There was testimony on the part of both Taylor and C. M. Cranston that appellant then desired loan privileges only to the extent of $3,500 which she wished to borrow on her Canton property.

[2] We think there was no error in admitting the testimony of appellees regarding the actual arrangement with appellant, notwithstanding the language of the receipt given by C. M. Cranston and Taylor at the time appellant paid her $1,000.[4] The testimony as to whether the words "and others" were in the receipt when it was signed is conflicting. But, regardless of this, we agree with the trial judge that if the exhibit was merely a receipt it was open to explanation, and, if a contract, it is evidently so incomplete as to admit evidence of surrounding and explanatory circumstances. The receipt specifies no number of contracts, nor does it appear therefrom what specific contracts were in mind, nor when they would mature.

[3-5] Appellant also produced an undated memorandum signed by Taylor, reading:

"Co-Operative League contracts. They will mature in 30 or 60 days. You get loans at 3 per cent., according to the amount paid in, also get money back."

Appellant says this was given to her before she paid in her money. In respect of several important features there is a sharp conflict between

was at law, the rules governing review are no more favorable to her. No written waiver of trial by jury appears. No findings of fact seem to have been asked for, and no findings of fact were in form made. City of Cleveland v. Walsh Construction Co. (C. C. A. 6) 279 Fed. 57.

[3]Defendant's answer to plaintiff petition states that defendants "proposed to plaintiff that the profit which should be derived from said purchase and sale [of certain unmatured League contracts] should be divided among those who invested their money in said project in proportion to the amount of the funds so invested," and that as a further inducement to plaintiff to invest defendants offered to give plaintiff the benefit of the first matured loans which might arise upon the purchased contracts, to the extent that the League might be willing to loan on first mortgage on plaintiffs property in Canton, Ohio, which loan plaintiff expressed a desire to make.

[4]The receipt reads: "We have received one thousand dollars ($1,000.00) from Mrs. E. Burget with which to purchase contracts from Co-Operative League. It is further agreed that Mrs. E. Burget is to receive the first money that matures, as she wishes to make a mortgage on her house [her Canton property] and others."

the testimony of appellant and that of appellees. To discuss those conflicts in detail would serve no useful purpose. Recognizing, as we must, that questions of credibility of witnesses were peculiarly within the trial court's province, we think the evidence does not clearly preponderate against the court's conclusions that there was a "joint adventure,"[5] that the profits were to be divided in proportion to respective capital contributions, and that appellant was to have the benefit of the "first maturities" only to the extent of desirable and obtainable loan on her Canton property, which, we understand, turned out to be but $3,500. Nor are we prepared to say that these conclusions are against the weight of the evidence. The possibly inaccurate statement of the trial judge that "the parties are agreed that the division was to be in proportion to the capital contributions made by each" does not seem very important, followed as it was immediately by the statement, "In addition thereto plaintiff contends that she was entitled to loan privileges first maturing," and in view of the finding that appellant did not prove "her right to claim the first maturities to the full extent of her participation." In reaching this conclusion we attach no special importance to any presumption of proportional equality of profits between the parties to the adventure.[6] It follows that, unless appellant is entitled to further trial upon the facts, it is our duty to affirm the decree of the District Court.

[6-7] Before the appeal was argued, appellant presented a motion for leave to take newly discovered evidence, and lodged with the clerk of this court a petition for leave to file bill of review. After the appeal was argued, appellant was given leave to present to the District Court either or both of those applications, as well as a motion to amend her petition. The District Court properly denied her application for a transfer to the law side of the court, with demand for jury trial. As has already been said, the cause was clearly in equity. The petition for rehearing was also properly denied, for the reason that before the appeal was taken the term at which the decree was rendered had expired.

Coming to the petition for leave to file bill of review: The $4,250 capital investment found by the District Court was the amount appellees claimed to have paid originally for $85,000 face of League contracts (five payments of $850 each) bought from one Datisch. Appellant filed an affidavit of that person that $100,000 of contracts had been bought instead of $85,000, and from which the inference was sought to be raised that greater commissions had been received than accounted for. It is enough to say of this feature that the affidavits in reply satisfactorily explain the transaction and refute the inference referred to.

Appellant also presented affidavits of several witnesses to the effect that the words "and others" were on the receipt, Exhibit A (dated

[5] See Words and Phrases, Title "Joint Adventure," also second series, same title; Ross v. Willett, 76 Hun, 211, 27 N. Y. Supp. 785; Jones v. Walker, 51 Misc. Rep. 624, 101 N. Y. Supp. 22, 23; Goodwin v. Camp, 295 Fed. 785, decided by this court Feb. 12, 1924.

[6] We have not discussed or mentioned all of the numerous questions raised in the record or in appellant's argument. We have, however, considered them all, and are of opinion that they do not affect the conclusion otherwise reached.

November 16, 1919), when seen at various subsequent dates, the earliest of which appears to be November 28, 1919; also affidavits corroborating appellant's alleged Wilmington investments in January and February, 1920, and her loss in the one case of $550 paid down and in another of the $200 down payment, plus a profit which otherwise would have been made, these losses inferably resulting from a failure to obtain the benefit of "first maturities" beyond the $3,500 realized.

Appellant also presented by her own affidavit certain new evidence not only tending to show that defendants were responsible for the needless delays in obtaining the loan upon her Canton property, but further to support her claim that defendants knew of her Wilmington investments in time to have prevented loss thereon. We have referred only to what appear to us the important features.

The District Court heard the parties fully, considering all these affidavits in connection with the testimony taken previous to the decree appealed from, the oral arguments presented, as stated by him, dealing "indiscriminately with the merits of the decision heretofore made, as well as with the considerations going to the pending application." The court adhered to the opinion that the true nature of the relationship between the parties was that of joint adventure, asserting the impossibility of a finding that the parties contemplated that appellant, by the payment merely of $1,000, which amounted to less than one-half the installments necessary to carry forward to April 1, 1920, the $10,000 of first maturities, should acquire all the preferred rights and privileges asserted therein. Whether or not the words "and others" were in the original Exhibit A was not then regarded by the court as controlling. Considering the testimony previously taken and that introduced under the petition for leave to file bill of review, the court was of opinion that it did not appear by the greater weight of the evidence that defendants, or any of them, knew that appellant had bound herself by the Wilmington contracts until some time in April, 1920, or that she was induced to enter into the same as the result of any conduct of defendants or any of them upon which she had a legal right to rely. The opinion was also expressed that the evidence did not fairly preponderate in favor of a conclusion that the delays occurring after April 1st in the procuring of the $3,500 loan were due to the unlawful conduct of defendants, rather than to "such as are inherent in negotiating and completing a loan under the circumstances."

In view of what has already been stated herein, the claim of unaccounted-for commissions, in connection with the purchase of the $85,000 of Datisch certificates, was naturally rejected.[7]

Upon a careful consideration of the evidence, both new and old, we think we must accept the district court's conclusion that leave to file the bill of review should be denied. And the more certainly in view of its conclusion (which we would not be justified in rejecting) that the contract is not to be construed as awarding appellant loan rights

[7] Manifestly, the question of amendment of appellant's petition becomes immaterial if she was not entitled to the relief asked by any of her several motions.

to the full extent claimed by her, although we assume, as respects the loss of Wilmington investments, that under such claimed construction appellant might be injured by a wrongful denial of agreed loan privileges, notwithstanding she would be chargeable with the selling value thereof.

[8-10] Leave to file such a bill is not matter of right, but is within the sound discretion of the court to which application is made. Thomas v. Brockenbrough, 10 Wheat. 146, 6 L. Ed. 287; Rubber Co. v. Goodyear, 9 Wall. (76 U. S.) 805, 19 L. Ed. 828; 10 R. C. L. p. 568. The newly discovered evidence must be controlling, not merely cumulative. The application may be refused, although the facts, if admitted, would change the decree, when the court, looking to all the circumstances, shall deem it productive of mischief to innocent parties, or for any other cause unadvisable. Ricker v. Howell, 100 U. S. 104, 107, 25 L. Ed. 527; Lavagnino v. Prall, 281 Fed. 581, 584, 52 App. D. C. 77, and cases there cited.

We are unable to say that the discretion vested in the court below has been abused or wrongly exercised. That court had heard orally all the testimony presented before final decree, and so had seen and observed all the parties as witnesses. We are impressed with the considerations adduced by the district judge in support of his ultimate conclusion. The case has received here the more careful consideration from the fact that, while previous to final decree appellant was represented by counsel, upon this appeal, as well as upon the applications since presented to the court below, including the application for leave to file bill of review, she has been represented only by herself.

At the close of an extended discussion upon the merits, the opinion was expressed by the district judge that all the parties to the suit were to be congratulated that they escaped from their adventure not only without a loss, but with a substantial profit. The conviction was also expressed that the result embodied in the final decree would benefit plaintiff more than would a retrial upon the new theories of the proposed amended petition, and that her best interests, as well as her legal rights, are best protected by denying leave to file bill of review. We see no sufficient reason to reject this conclusion.

More than two months after the district court denied leave to file bill of review, appellant presented here a further application for leave to file certain newly discovered evidence, by way of a part of a letter written to appellant by appellee C. M. Cranston, and a copy of a statement rendered appellant by the League in December, 1922, accompanied by appellant's affidavit. We are unable to see in this evidence such importance as to justify a change of result. The application is therefore denied. A still later application of a similar nature is also denied, and for the like reason.

The decree appealed from is accordingly affirmed.