## LA VARRE v. HALL.
No. 5860.

Circuit Court of Appeals, Fifth Circuit.
July 21, 1930.

John E. Hall, Warren Grice, and Chas. J. Bloch, all of Macon, Ga., Irvine F. Belser, of Columbia, S. C., A. B. Lovett, of Savannah, Ga., and L. W. Perrin, of Spartanburg S. C. (Hitch, Denmark & Lovett, of Savannah, Ga., Melton & Belser, of Columbia, S. C., Perrin & Tinsley, of Spartanburg, S. C., Hamilton Phinizy, of Augusta, Ga., and Hall, Grice & Bloch, of Macon, Ga., on the brief), for appellant.

John A. Sibley, of Atlanta, Ga., Geo. S. Jones and Scott Russell, both of Macon, Ga., Henry C. Hammond, of Augusta, Ga., and Louis M. Loeb, of New York City (Spalding, MacDougald & Sibley, of Atlanta, Ga., Hammond & Kennedy, of Augusta, Ga., Jones, Jones, Johnston & Russell, of Macon, Ga., and Cook, Nathan & Lehman, of New York City, on the brief), for appellee.

Before BRYAN and FOSTER, Circuit Judges, and GRUBB, District Judge.

FOSTER, Circuit Judge.

The issues in this case can best be stated by briefly reviewing the pleadings and the progress of the case. Harold Hall, appellee, brought this suit originally in the superior court of Richmond county, Ga., against William La Varre, appellant. The petition in substance alleged that Hall and La Varre, both newspaper men of more or less experience, had conceived the idea of acquiring a group of newspapers in the Southeast and had entered into a partnership agreement on an equal basis for that purpose. Each was to contribute such skill and experience as he had, but neither was possessed of sufficient means to carry through the project; that in order to finance the enterprise $870,000 was borrowed from the International Paper Company; that the partnership acquired all the capital stock of the Augusta Chronicle Publishing Company, of Augusta, Ga., the Record Publishing Company of Columbia, S. C., and the Herald-Journal Company of Spartanburg, S. C.; that La Varre obtained all the capital stock of the said corporations and had it transferred to him in his own name on the books of the companies; that it was agreed that this stock should be delivered to the International Paper Company as security for the loan, but that La Varre refused to do this and refused to recognize Hall's interest; that La Varre had received $400,000 of the money borrowed for the purpose of purchasing the stock of the Spartanburg paper and diverted $122,900 of this to his personal account and failed to use the funds for the purpose of paying the debts of the paper as was intended; that La Varre had called a special meeting of stockholders and also a directors' meeting of the Augusta Chronicle Publishing Company for the purpose of amending the by-laws and with the intention of changing the management of that corporation and placing himself in control, and with the intention of displacing Hall and rendering him without authority as president and treasurer of the said corporation. Other allegations of the petition are immaterial. On this petition Hall prayed for a decree dissolving the partnership and impressing the capital stock of all the said corporations with his interest; that the shares standing in the name of La Varre be delivered to the court and canceled; and that new certificates be issued in such manner as to recognize his ownership and protect the interest of third persons. The petition also prayed for a receiver to take possession of the partnership assets and the $122,900 in the hands of La Varre, and for an injunction restraining La Varre from holding the stockholders' and directors' meetings, which had been called for June 25, 1929, and from making any transfer or other disposition of the stock in the three companies, and from disposing of the $122,900. Personal service was had on La Varre, and the state court issued the injunction and appointed a receiver as prayed for. The suit was then removed to the federal court by La Varre on the ground of diversity of citizenship. Thereafter he moved to vacate the appointment of the receiver, set aside the injunction, and to dismiss the bill on the ground that it was without equity. These motions were denied. La Varre answered, admitted he had acquired the stock in the various companies and that he had received the money borrowed from the International Paper Company, including the $122,900, but denied that he had appropriated any part of it to his own use. He denied the partnership agreement and alleged that the idea of acquiring the newspapers was entirely his own. He alleged that he had agreed to pay Hall the same salary he was receiving as the purchasing agent of the Scripps-Howard Syndicate and to give him an interest in a holding company to be formed to take and hold the stock of the newspaper companies, such interest to be determined by himself alone. He denied that Hall had obligated

himself in any way in connection with the enterprise. He admitted that it was his intention to reorganize the Augusta Chronicle and dispense with Hall's services in connection therewith.

After an extended hearing, a judgment was rendered holding that Hall and La Varre were equally interested in all of the capital stock of said newspapers, except five shares of the Spartanburg Herald-Journal, which could not be found, and any moneys and other assets of the said corporations, and decreeing that the partnership be dissolved and an accounting had. A commissioner was appointed to take charge of the papers, and it was ordered that new stock be issued to him for the benefit of both parties. Both Hall and La Varre were enjoined from interfering with the commissioner in the management of the papers and a special master was appointed to state an account between them. It is from this final decree that this appeal is prosecuted.

There are nineteen assignments of error. Two have been abandoned, and we need not discuss the others in detail, as we may consider the principal contentions made by appellant.

■ It is contended that the court was without jurisdiction. This is based on the mere technicality that the petition filed in the state court failed to allege that the defendant was within the jurisdiction. Conceding that this might have been given effect in the state court if properly and timely urged, it is without force here. Appellant did not move to quash the service and waived any irregularity by moving to dismiss the bill for want of equity.

■ It is also contended by appellant that the contract sought to be enforced was against public policy, in that Hall and La Varre as copartners were attempting to do business in corporate form for their own convenience treating the corporate powers and functions as mere incidents. This contention requires no discussion as it is entirely without merit.

■ It is further contended that Hall has mistaken his remedy; that if he had any cause of action it was either for specific performance of the contract or for a partition. There is no doubt that in this case the plaintiff did not have a plain, adequate, and complete remedy at law. The courts of the United States are not hampered by the mere name to be given an action. If a suit to redress a wrong does not fall within one of the usual classes of cases, nevertheless the federal courts will take jurisdiction and supply the remedy, in the administration of the broadest equity, where their jurisdiction otherwise properly attaches. Union Pacific Railway Co. v. Chicago, etc., Railway Co., 163 U. S. 564, 600, 601, 16 S. Ct. 1173, 41 L. Ed. 265. It has been frequently held that where there is a partnership or joint venture agreement, the remedy for a breach is for a dissolution and settlement of the partnership affairs and an accounting. Procter & Gamble Co. v. Powelson (C. C. A.) 288 F. 299; Burget v. Cranston (C. C. A.) 297 F. 32; Houston v. Dexter & Carpenter (D. C.) 300 F. 354. We think the action would lie as brought.

It is contended, of course, that the evidence does not support the conclusions reached by the District Court. The record is voluminous, but it would serve no good purpose to extensively review the evidence. There was sharp conflict between the testimony of Hall and La Varre, but the district judge saw and heard the witnesses. He was in the best position to determine their credibility, and we would hesitate to overturn his deliberate judgment if that were all. It also appears that Hall is corroborated extensively by other witnesses and by many exhibits, in the nature of promissory notes, trust agreements, and options to purchase the stock, executed jointly by both partners. It is sufficient to say that the evidence in the record amply supports the conclusions of the District Court.

■ Appellant complains that the decree undertakes to interfere with the internal management of the affairs of a corporation organized under the laws of another state than that in which the proceeding was had. As to this he contends that the court was without jurisdiction to enter the decree. It is a fundamental maxim that equity acts in personam and not in rem. Having jurisdiction of the parties, a court of equity may compel by appropriate process the performance of every act that if done voluntarily by them would give full effect to the decree in personam, although the real or personal property which is the subject-matter in controversy is not within its territorial jurisdiction. Phelps v. McDonald, 99 U. S. 298, 25 L. Ed. 473; Cole v. Cunningham, 133 U. S. 107, 10 S. Ct. 269, 33 L. Ed. 538. It is not suggested that what was ordered done by the decree would violate any law of South Carolina. There is no doubt that the District Court had jurisdiction to enter the decree and it was right and proper in the premises.

The record presents no reversible error.

Affirmed.