**THOMPSON et al. v. DUNCAN.**

No. 1293—5775.

Commission of Appeals of Texas, Section B.

Jan. 6, 1932.

Starnes, James, Clower & Gibson, of Greenville, and L. L. James, of Henderson, for plaintiffs in error.

W. E. West, of Canton, and W. B. Harrell and Adams & Harrell, all of Dallas, for defendant in error.

LEDDY, J.

In September, 1929, the town of Van, in Van Zandt county, consisted of two stores and a few residences. At that time one of the major oil companies was drilling a well near this village. Plaintiffs in error, J. T. Thompson, E. L. Fowler, B. M. Fowler, and E. B. Tunnell owned several tracts of land in the immediate vicinity of this town site. Defend-

ant in error, J. L. Duncan, was an experienced promoter of town sites in oil fields. On the 27th day of September, 1929, plaintiffs in error entered into written contracts with defendant in error for the purpose of developing a town site on their respective lands in the event the well being drilled near said village became a producer of oil. Under these contracts plaintiffs in error placed in the control of the defendant in error certain described lands which were to be platted into lots and blocks and streets laid off so as to enable the same to be sold to the general public. Defendant in error was not required to do any work of platting the lots until the well being drilled should come in as a producer of oil.

The contracts made by each of the plaintiffs in error were identical except as to the land described therein. Plaintiffs in error were entitled to retain title to the land placed at the disposal of the defendant in error until such time as defendant in error should sell any lots out of such acreage and receive full consideration therefor, at which time each plaintiff in error obligated himself to execute proper deeds to the purchaser. When the land was sold, plaintiffs in error were to be paid therefor at the rate of $50 per acre. In addition to this payment, each plaintiff in error was to receive 25 per cent. of the net proceeds of all lots sold out of the acreage contributed by him to the common enterprise. As a basis for determining the amount to be paid by defendant in error to the plaintiffs in error, the contract contained a provision requiring defendant in error to make to plaintiffs in error a written report on the 1st and 15th of each month following the beginning of operations under such contract of the business transacted by him thereunder, and he was obligated at said time to pay 25 per cent. of the cash receipts, less necessary expenses, which might be shown to be due by such reports.

It is shown that the well being drilled came in as a large producer of oil a few days prior to October 15, 1929, and that Duncan immediately began the work of developing the town site. A large number of lots were sold or leased within a few days thereafter, and a number of houses erected thereon. Practically all of the lots sold by defendant in error were out of the acreage owned by plaintiff in error Thompson. There is, however, evidence tending to show that a few lots were sold out of the acreage belonging to the other plaintiffs in error.

Defendant in error wholly failed to make the report to plaintiffs in error provided for in his contract on October 15, November 1, and November 15, although he was importuned to do so by plaintiffs in error. After numerous demands by them, he finally made a written report to plaintiff in error Thompson alone, but none to the other plaintiffs in error. This report merely gave the contract number of the

lots sold, the total consideration, and the amount of the cash payments. It did not give the name of the purchaser, the date of the sale, the period covered by the report, the terms of the sale, the terms of the deferred payments, or the amount collected thereon. The aggregate of sales as shown by the report was $37,392.75, with cash payments of $12,799.47. There was attached to this report an itemized statement of expenses incurred in the development of the town site, amounting to $3,657.32.

Defendant in error gave plaintiff in error Thompson, at different times, two checks, one for $1,800, and one for $1,000. The $1,800 check contained an indorsement on the back that it was in settlement of the amount due plaintiff in error for his acreage at $50 per acre. Thompson, however, denied that such indorsement was on the check at the time he cashed it.

A few days after plaintiff in error Thompson received the defendant in error's purported report of the joint enterprise he brought this suit, joined by the other plaintiffs in error, to whom defendant in error had made no report of sales made out of the acreage contributed by them. The suit, as disclosed by the petition, was for the purpose of terminating the contract, for the appointment of a receiver to complete all unfinished business that had been undertaken by defendant in error, and to perpetually enjoin the latter from performing any further work under said contract.

It was shown upon the trial of this case that prior to the filing of the suit plaintiff in error Thompson attempted to get an audit of defendant in error's books in order that he might ascertain the amount due him by reason of the operation of this joint enterprise. Defendant in error promised to submit the books for inspection of Thompson's auditor at 3 o'clock on a Saturday afternoon. At the appointed time Thompson was present with his auditor, but Duncan failed to show up, and his bookkeeper declined to surrender possession of the books for inspection by plaintiffs in error's auditor. After the suit was filed, and on December 12, 1929, plaintiff in error Thompson wrote a letter to Duncan asking him for specific information with reference to the sale of lots and collections made under this contract. The request for this information was wholly ignored by Duncan.

At the close of plaintiffs in error's testimony the record shows the following colloquy between the attorneys for the parties to this litigation:

Mr. James: "We have had a subpoena duces tecum issued for Mr. Duncan and the bookkeeper to bring the books and records; they are not here; I don't know whether you are going to finish this case before night or not; we would like to hold over until tomorrow and get them. I will ask Mr. Harrell if he objects to furnishing them."

Mr. Harrell: "I don't have them."

Mr. James: "If Mr. Duncan will let us bring the books and records—"

Mr. Harrell: "I don't know where Mr. Duncan is."

This cause was tried on the 22d of January, 1930. It is shown that no reports as to the sale of lots or collections on the deferred payments of the contracts of sale have been made or any information in regard thereto furnished by defendant in error to plaintiffs in error. Defendant in error did not appear in person upon the trial of the case and offered no evidence showing the then status of his operations as trustee for his coventurers.

At the close of plaintiffs in error's testimony the defendant rested without offering any evidence. Both parties immediately moved for an instructed verdict. Defendant in error's motion was denied and that of plaintiffs in error was sustained. Upon the verdict thus rendered the court rendered judgment reciting that the undisputed testimony disclosed a failure of defendant in error to comply with the terms of the contract offered in evidence, and that plaintiffs in error were therefore entitled to a termination of the same. It was decreed that each of the contracts entered into by and between the parties thereto be terminated and the unsold lands described in said contracts returned to the plaintiffs, subject to the vested rights of any and all third parties who had acquired an interest therein under said contract.

It was further decreed that a receiver be appointed to take charge of all assets of the said company, including plaintiffs' papers, contracts, and moneys; such receiver was required to make and file an inventory of all property belonging to the joint enterprise.

Upon appeal the Court of Civil Appeals held the judgment of the trial court, in so far as it decreed a cancellation of the contract and the appointment of a receiver, should be reversed and rendered in favor of defendant in error, but the cause was remanded as to the matter of filing of reports and making an accounting between the parties hereto.

In order to determine the character of relief plaintiffs in error were entitled to, it is necessary to ascertain the nature of the relation created by the contracts they have entered into with defendant in error. We think the Court of Civil Appeals correctly held that such contracts created a joint adventure. The plaintiffs in error contributed their property to the joint enterprise and the defendant in error his funds, skill, and labor for the common purpose of promoting a townsite, with the provision for a division of the net proceeds arising therefrom. It is true that each plaintiff in error was only entitled

to a net commission of 25 per cent. on the sale of lots from the particular acreage contributed by him to the town site. But we find a provision in all the contracts allowing each plaintiff in error the privilege of selecting, without cost to himself, a residence and a business lot, and in such selection he was not confined to his own acreage, but was expressly allowed the privilege of selecting the same, out of any acreage composing the town site. Again, at the time these contracts were entered into, all of the land was covered by valid mineral leases. Defendant in error was given the privilege, under the terms of his contracts with plaintiffs in error, to agree with the oil company holding such lease as to where drilling operations should be conducted by such company. It thus appears that the interests of all the parties are so interwoven in the entire project that its operation must be held to constitute a joint adventure. Hammel v. Feigh, 143 Minn. 115, 173 N. W. 570; Burget v. Cranston (C. C. A.) 297 F. 32; Central Trust Co. of Owensboro v. Creel, 184 Ky. 114, 211 S. W. 421.

One of the characteristics which distinguish a joint adventure from a partnership is that the latter is formed for the transaction of a general business of a particular kind, while a joint adventure is usually limited to a single transaction. Welling v. Crosland, 129 S. C. 127, 123 S. E. 776, 777; Kaufman v. Catzen, 100 W. Va. 79, 130 S. E. 292; Kaufman v. Catzen, 81 W. Va. 1, 94 S. E. 388, L. R. A. 1918B, 672.

Courts do not treat a joint venture as identical with a partnership, yet it is universally held that such relation is so similar in its nature to a partnership and in the contractual relation created thereby that the rights as to the members are governed by substantially the same rules that govern partnerships. R. C. L. vol. 15, p. 500; Senneff v. Healy, 155 Iowa, 82, 135 N. W. 27, 39 L. R. A. (N. S.) 219; Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108, Ann. Cas. 1914C, 689.

Each of the parties engaged in this common enterprise in the nature of a joint adventure had the right to demand that his associates act with good faith in regard to all matters in connection with their common interest. Under such circumstances the parties bore a fiduciary relation to each other and were bound to the same degree of good faith in all the dealings of the common enterprise that is required in cases of partnership. Saunders v. McDonough, 191 Ala. 119, 67 So. 591; Menefee v. Oxnam, 42 Cal. App. 81, 183 P. 379; Marston v. Gould, 69 N. Y. 220; Stem v. Warren, 185 App. Div. 823, 174 N. Y. S. 30; Dike v. Martin, 85 Okl. 103, 204 P. 1106; Niles v. Lee, 31 S. D. 234, 140 N. W. 259.

The utmost good faith was required of defendant in error, who was the trustee in the conduct of the joint enterprise. He should not be permitted by reason of his possession of the property or the profits of the enterprise to obtain any unfair advantage of his coadventurers. Seehorn v. Hall, 130 Mo. 257, 32 S. W. 643, 51 Am. St. Rep. 562; Lind v. Webber, 36 Nev. 623, 134 P. 461, 135 P. 139, 141 P. 458, 50 L. R. A. (N. S.) 1046, and note, Ann. Cas. 1916A, 1202, and note.

While a court of equity will not dissolve a joint adventure for slight or trivial dereliction upon the part of one of the members, yet it will dissolve the same for such misconduct upon the part of a coventurer as would justify the dissolution of a partnership. McDonough v. Saunders, 201 Ala. 321, 78 So. 160, 11 A. L. R. 419; American Security Co. v. Barker Co., 102 Neb. 515, 167 N. W. 780, 169 N. W. 257; Hubbel v. Buhler, 43 Hun (N. Y.) 82; 30 Cyc. 655.

Defendant in error insists that plaintiffs in error should have been denied a rescission of the contract under the familiar rule that they had already received benefits thereunder and that a rescission could not be had without a restoration of the statu quo. The rule invoked has no application to this case, as the action is not one for a rescission of the contract, but rather for dissolution and accounting. It is the general rule that when dealing with partnership or joint venture agreements the remedy of the complaining party, or his coventurer, is in equity for an accounting and settlement of the partnership affairs. La Varre v. Hall (C. C. A.) 42 F.(2d) 65; Procter & Gamble Co. v. Powelson (C. C. A.) 288 F. 299; 30 Cyc. 451, 455.

It is further asserted that the breach of the contract by Duncan was not of such a nature as to destroy the substantial purpose of the contract or prevent the same being carried out, and that therefore it was not such a breach as would justify a termination of the same. This insistence was sustained by the Court of Civil Appeals. That court invoked the rule laid down by Page on Contracts to sustain its holding, the rule announced being as follows: "If a substantial part of the contract has been performed, a breach of other covenants of the contract is not ground for cancellation, *unless the covenant which is broken is a vital part of the contract, without which the remaining covenants would not have been undertaken.*"

We think the rule thus quoted, instead of supporting the holding of the Court of Civil Appeals, is authority to the contrary. It is unreasonable to assume that the plaintiffs in error would have placed their lands under the control and disposition of the defendant in error without the vital provision which required him to deal in good faith by making detailed reports of his operations and peri-

odical settlements thereunder. Such a provision was absolutely essential for their protection.

The defendant in error's conduct toward plaintiffs in error as disclosed by this record was so lacking in good faith, and the rights of plaintiffs in error were so completely disregarded and ignored, that they were clearly entitled to have their contracts terminated. Each of the plaintiffs in error testified that they knew of no property possessed by the defendant in error, and did not know where he kept the proceeds collected from lot sales or deferred payments thereon. Plaintiffs in error should not be required to sit supinely by and let the defendant in error conduct this joint enterprise in gross disregard of their rights. The only report made by him was worthless in so far as it furnished any basis for the plaintiffs in error to check defendant in error's operations. The report did not disclose the period of time that the sales listed therein covered. Whether they were made within the first month or the first three days of operation does not appear. The name of the purchaser, or the terms of the deferred payments in contracts of sales made by defendant in error, were not given. For aught that appeared from this report, all the deferred payments may have been due in thirty days after date and collected in full.

When the defendant in error was called upon by letter for specific information, which he as a trustee was under a solemn duty to furnish his associates in this enterprise, he wholly ignored their request. He declined to permit an inspection of his books after promising to do so. When this case was called for trial he absented himself and did not offer any evidence whatever. Although plaintiffs in error offered evidence on the trial tending to show that other sales had been made by defendant in error since the filing of his purported report, yet no report covering same was made up to the time of the trial, and defendant in error declined to make any showing upon the trial which would in any way tend to excuse or justify his conduct. We can hardly imagine a state of facts which would show a more flagrant disregard of the rights of the members of the joint enterprise by the man who was designated as trustee to conduct its operations. That a court of equity should require plaintiffs in error to continue operation of this joint enterprise with defendant in error as trustee would be to completely ignore the rule which requires the exercise of the utmost good faith upon the part of members of such a joint enterprise toward each other.

■ But it is argued by defendant in error that plaintiffs in error produced no proof upon the trial showing injury to them by reason of his failure to make the reports required by the contract. We think, as before stated, there were sufficient circumstances shown to justify an inference that defendant in error had made sales of lots not covered by his report. Even if this were not true, defendant in error, resting under the solemn duty of furnishing his associates with full information in regard to all transactions had in the common enterprise, and having failed and refused to do so, is in no position to complain of the insufficiency of the showing made by them as to injury. If A should furnish B money to conduct a commercial business with an agreement for division of the profits, and B should refuse to make reports required for a determination of the amount of the profits or permit A to inspect the books and records of the business, a court of equity would not hesitate to grant A a dissolution of the partnership with an accounting, even though A would not be in position to show the extent of his injury by reason of the breach of the contract by his partner. Any other rule would place it within the power of a trustee to take advantage of his own wrong to the injury of those for whom he acts. The law will not sanction any such proposition.

The judgment rendered by the trial court does not forfeit any of the rights acquired by defendant in error while the contracts were in force. It merely terminates the operation of the enterprise. Unquestionably the conduct of Duncan in failing to deal fairly with his coadventurers furnished ample ground for the termination of their joint agreement. Martin v. Burris, 37 Cal. App. 739, 208 P. 174; Ryman v. Ryman's Ex'rs, 100 Va. 20, 40 S. E. 96.

By verified motion filed by plaintiffs in error E. L. Fowler, B. M. Fowler, and E. B. Tunnell, it is shown that during the pendency of this appeal they have settled and adjusted all differences existing in this controversy with defendant in error, and they no longer desire to prosecute their appeal.

We therefore recommend that the judgment of the Court of Civil Appeals and of the trial court be reversed, and the cause dismissed as to the above-named plaintiffs in error, and that the judgment of the Court of Civil Appeals be reversed as to plaintiff in error J. L. Thompson, and the judgment of the trial court affirmed.

The judgment of the Court of Civil Appeals is reversed, and the cause dismissed as to certain parties, and the judgment of the district court affirmed as to other parties, as recommended by the Commission of Appeals.

CURETON, C. J.