Fuld, J. (dissenting).
Although I agree with the Chief Judge that there should be a reversal, I do not find it necessary, in reaching such a result, to rely on Leibert v. Clapp (13 N Y 2d 313).
The enterprise before us is a “ close corporation ” in the strictest sense, that is, one in which, regardless of the distribution of the shareholdings, (£ management and ownership are substantially identical ”. (Israels, The Close Corporation and the Law, 33 Cornell L. Q. 488.) In such a ease, it seems almost self-evident, the fiduciary obligation of the majority to the minority extends considerably beyond what would be its reach in the context of a larger or less closely held enterprise. Here the relationship between the shareholders is very much akin to that which exists between partners or joint venturers.
Each case must, of course, be determined upon its own facts but there is no inherent reason why a court of equity cannot treat the participants in a genuine close corporation, insofar as their relationship inter sese is concerned, as they regard themselves—'as partners or joint venturers.[1] On this analysis, they become not only entitled to the benefits of the relationship but equally subject to its burdens, including the power of a court of equity to dissolve the venture and, in so doing, to impose terms. Thus, it is my opinion, particularly in view of the increasing trend to legislative and judicial recognition of the distinctive character of the genuine close corporation,[2] that the analogy of the relationship between the participants themselves —'Wholly apart from that of their corporate creature to the *807 world at large — to an informal joint venture with the shares of the corporation as its asset is apposite and useful. (See Conway, The New York Fiduciary Concept in Incorporated Partnerships and Joint Ventures, 30 Fordham L. Rev. 297.)
The concept of joint venture is not a rigid one; “ it does not require ”, one thoughful writer on the subject has noted, “ an explicit agreement applying the label ‘ joint venture ’ to the activity or series of activities in question; and * * * the closest analogy is to a partnership at will.” (Israels, The Sacred Cow of Corporate Existence, 19 U. of Chi. L. Rev. 778, 792.) As the same writer went on to say, “ [f]rom that analogy flows the power of the Chancellor to dissolve and liquidate as in a partnership * * * in any manner calculated to produce a fair result”. Although the court would be empowered to direct that the stock (the asset of the venture) be voted for dissolution, such an extreme step may not be necessary to accomplish a fair result. For example, a practical solution might be found in a procedure under which either interest may purchase the shareholdings of the other, at an appraised value found by the court and upon terms set by it. Flexibility of remedy, tailored to all the facts and circumstances of the case, including the good faith of the parties on both sides, their conflicting interests and motivations, if any, is the key. (Cf. Partnership Law, § 69, pursuant to which a court in partnership accounting may penalize partner for inequitable conduct.)
I would reverse the order appealed from and remand the case to Special Term for further proceedings.
Order affirmed.

. Although I recognize that this view runs counter to decisions in this court (see Weisman v. Awnair Corp. of America, 3 N Y 2d 444, 449), it reflects a growing trend throughout the country (see, e.g., De Boy v. Harris, 207 Md. 212; La Varre v. Hall, 42 F. 2d 65; Conway, The New York Fiduciary Concept in Incorporated Partnerships and Joint Ventures, 30 Fordham L. Rev., 297, 320) and is likewise the view expressed in Judge Desmond’s dissent in', the Weisman case (3 N Y 2d, at pp. 451-452).

. See, e.g., Business Corporation Law, §§ 616, 620, 709, 1002, by which the Legislature has greatly enlarged the power and freedom of shareholders to contract with respect to internal corporate government.